UTILITY WORKERS UNION OF AMERICA et al., Plaintiffs,

v.

CONSUMERS POWER COMPANY, and the Pension Plan for Employees of Consumers Power Company, Defendants.

Civ. A. No. 7–71747.

United States District Court, E. D. Michigan, S. D.

June 13, 1978.

---

**16.** 37 Fed.Reg. 10353 (1972).

Theodore Sachs, Detroit, Mich., for plaintiffs.

William O. Allen, Arunas T. Udrys, Jackson, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PHILIP PRATT, District Judge.

The individual plaintiffs are former employees of defendant Consumers Power Company and participants in defendant Plan who currently have their privately funded retirement benefits reduced because of deductions or offsets for payments re-

ceived under the Michigan Workers' Compensation Act. The individual plaintiffs seek to represent a class of similarly situated Plan participants.[1] The Union, which is the authorized collective bargaining agent for the employees of Consumers Power Company, seeks to maintain this action on behalf of its membership.

The complaint alleges that the Consumers Power Company's Pension Plan policy of offsetting pension benefits in an amount equal to the workmen's compensation benefits received by an eligible retiree on a monthly basis[2] violates the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Specifically, the plaintiffs claim that the provision relating to workmen's compensation offsets (1) operates as a forfeiture in violation of 29 U.S.C. § 1053(a); (2) improperly reduces the company's funding obligation in violation of 29 U.S.C. § 1103(c)(1); and (3), in effect functions as an assignment of pension benefits contrary to the provisions of 29 U.S.C. § 1056(d)(1). The plaintiffs seek a declaration that the portions of the pension plan which provides for workmen's compensation offsets violates ERISA; that further implementation of the provision be enjoined; and that they be awarded recovery of pension benefits improperly withheld. There are no disputed issues of fact. The parties have filed cross-motions for summary judgment and extensive briefs.

This case presents the Court with difficult issues of statutory interpretation. The problems a Court ordinarily confronts in construing a Congressional enactment are increased here by the fact that the intricacies of the recent, sweeping revision of the law relating to pensions embodied in ERISA must be considered in conjunction with the state workmen's compensation system. Since neither Congress nor any court has spoken directly to the subject,[3] the parties have requested the Court to turn to the language of ERISA and the legislative history to determine whether the intent of the Act was to permit the type of pension offset contained in the Consumers Power Pension Plan.

As with many challenging legal problems, this one has its genesis with a common, everyday occurrence—the payment, or rather non-payment, of money. Thus, it is useful to review the practical aspects of the dispute before undertaking an analysis of the technical legal issues involved. In this way the controversy will have a familiar context which may be borne in mind throughout the remainder of what to this Court is, at times, a tortuous struggle of inference and counter-inference drawn from a highly specialized statute and its attendant legislative history.

The Court is asked, in effect, to decide how much money certain pensioners should receive in their monthly checks, or, conversely, how much money the Plan must pay out in benefits to certain of its participants. Plaintiffs would have the Court re-

---

1. None of the parties have filed a motion relating to class certification as required by FRCP 23(c)(1). Inasmuch as the class aspects of this litigation have no hearing on the liability issues, the Court can properly postpone consideration of class-wide relief until after a decision on liability.

2. Section V(2) of the Pension Plan provides that monthly pension payments will be reduced in an amount equal to workmen's compensation benefits paid in the preceding month. Under no circumstances, however, will the monthly offset exceed the amount of normal pension benefits due for the month in which the workmen's compensation payments were made. Thus, no single monthly offset can ever be applied to more than one month of pension benefits. To the extent that workmen's compensation payments exceed the pension benefit

in any month, neither the Plan nor the workmen's compensation fund can recover the difference.

3. The only case presented to the Court which considers the precise issue raised in this lawsuit is *Carlson v. Bundy Manufacturing Co.*, Civ. No. 6 72274 (E.D.Mich. Aug. 18, 1977) in which this Court found the offset to be permissible. There, however, the legal issues were briefed much less extensively. Both parties agree that the Court should examine the issues fully in the context of the instant case. The most expeditious way to do this is to proceed without further reference to the *Carlson* opinion which is, in any event, a much more superficial exploration of the question than is evident in the record of this litigation.

quire the payment without any offset of full pension benefits to those retirees covered by the Plan who also happen to qualify for workmen's compensation benefits. The defendant objects that such a requirement would result in an unconscionable windfall to plaintiffs. It is clear from the record that striking down the offset could result in some individuals receiving combined pension and workmen's compensation benefits that exceed the salary they earned while working. Defendant seeks Court approval of the offsets as a rational response to the problem of multiple post-retirement payments from the same funding source.[4] The plaintiffs, for their part, object that this result would completely vitiate the workers' protection purposes which were motivating factors in ERISA's enactment. Plaintiffs fear that approval of this offset would be the opening wedge in a series of increasingly offensive money saving pension plan clauses.[5]

## STANDING TO SUE

Preliminarily, the defendants argue that the Union is not a proper party plaintiff to this action. The Union, as exclusive collective bargaining representative for the individual plaintiffs, argues that it has standing to maintain this action under Section 1041(a) of ERISA, 26 U.S.C. § 7476(b)(2), which gives the Union a right to make comments on advance applications for Internal Revenue Service Qualification for pension plans.

 This action is brought under 29 U.S.C. § 1132. Under subsection (a), civil actions may be brought by Plan participants, Plan beneficiaries, the Secretary of Labor or Plan fiduciaries. Plan participants are defined in 29 U.S.C. § 1002(7), Plan beneficiaries in 29 U.S.C. § 1002(8), and Plan fiduciaries in 29 U.S.C. § 1002(21). Each of these categories of entities is different than an employee organization, which is defined in 29 U.S.C. § 1002(4) as

"any labor union or any organization of any kind . . . which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan or other matters incidental to employment relationships."

The Union is concededly an employee organization within the meaning of ERISA. However, an employee organization is not mentioned in § 1132(a) as one of the persons or entities qualified to bring civil actions to remedy violations of the Act. Given the detail of the statutory scheme and the precise language chosen by Congress, the Court is persuaded that the Union lacks standing to sue under ERISA for the relief requested here. The individual plaintiffs are clearly entitled to sue under 29 U.S.C. § 1132(a)(1), (3), (4). Had Congress intended to confer the right to sue on an employee organization it would have said so. The Union must be dismissed as a party plaintiff.

## FORFEITURE

It is necessary to set forth two provisions of the pension plan and one portion of ERISA to understand the nature of the plaintiffs' claim in this action. Section V(1) of the Plan says:

"The monthly Retirement Income payable to an employee who, at Normal Retirement Date or at Deferred Retirement Date, retires on or after January 1, 1976, pursuant to the provisions of the Plan from the service of the Company, will be an amount equal to the product of the employee's Final Pay times the sum of the percentages determined as follows:

1½% for each of the first 20 years of Accredited Service;

1% for each of the next 10 years of Accredited Service;

½% for each of the next 10 years of Accredited Service."

Section V(2) of the Plan describes the workmen's compensation offset:

---

4. It is agreed by the parties that Consumers Power Company funds the entire cost of both the workmen's compensation premiums and the pension plan involved in this litigation.

5. For example, plaintiffs contend that the defendants' logic would require approval of plan clauses which offset benefits for all manner of non-job-related conduct, such as speech or leisure-time activities.

"All Workmen's Compensation weekly payments received by a retired employee from the Company, Michigan Gas Storage Company, Northern Michigan Exploration Company, or anyone else making such payments for one of those companies will be a credit against any Retirement Income or any other payments under this Plan. Monthly payments under the Plan will be reduced by the amount of such credit pursuant to the following rules:

(a) The credit will be based on Workmen's Compensation paid during the preceding month. If Workmen's Compensation payments were made for the entire month, the credit will equal 4⅓ weekly Workmen's Compensation payments.

(b) The maximum credit against any Retirement Income or any other payments under this Plan for Workmen's Compensation payments in any month will be the amount of such monthly payments due under this Plan for the succeeding month."

Plaintiffs argue that the Plan provisions, particularly Section V(2), contravene the terms of Section 203 of ERISA, 29 U.S.C. § 1053, in which Congress enacted a broad scheme regulating minimum vesting standards for pension plans covered by the Act. Subsection (a)(2)(A) of Section 203, 29 U.S.C. § 1053(a)(2)(A), sets out a specific nonforfeitability requirement:

"Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition . . . an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions."

ERISA contains several exceptions to this nonforfeitability requirement which concededly do not apply to any of the individual plaintiffs in this action. 29 U.S.C. § 1053(a)(3).[6]

Initially the plaintiffs argue that the Court need look no farther than Section V(1) of the Plan to find that the workmen's compensation offset is a forfeiture. Plaintiffs contend that both the "normal retirement benefit" and the "accrued benefit", as those terms are used in Section 203(a) of ERISA are fully defined in Section V(1) of the Plan. Failure to pay the benefits defined in that section, they reason, is necessarily a forfeiture within the meaning of the Act. Plaintiffs' logic is made complete by the agreed-upon fact that as to them the defendant has adhered to the offset provisions of Section V(2).

In plaintiffs' view Section V(2) and the other subsections of Section V[7] are merely formalistic provisions which arithmetically dictate the amount of each monthly check. Thus, plaintiffs interpret the Plan so that only Section V(1) states the amount of plan benefit, with the remaining sections being without significance to ERISA. Plaintiffs argue, in effect, that it is unnecessary to determine whether the offset provision per se is a forfeiture since failure to pay the normal retirement benefit as set forth in Section V(1) is clearly a forfeiture under the Act. Defendants argue, in opposition, that the Plan's normal retirement benefit, as that term is used in ERISA, is the sum to be paid a plan participant taking into account all parts of Section V of the Plan.

Congress has defined "accrued benefit" to mean "the individual's accrued benefit determined under the plan . . ." 29 U.S.C. § 1002(23)(A). "Normal retirement benefit", under the Act means "the benefit under the plan commencing at normal

***

6. Congress exempted from the nonforfeitability requirement plans which provide that payment shall cease if the survivor dies, plans which suspend payments while the participant is reemployed in certain types of industries, where certain amendments are made retroactive, where plan members have voluntarily withdrawn their mandatory contributions and to forestall economic failure of a plan.

7. Subsection 3 describes early retirement income, subsection 4 supplemental retirement income, subsection 5 minimum pension income, subsection 6 maximum retirement income and subsections 7 and 8 discuss the manner in which payments will commence and terminate.

retirement age." 29 U.S.C. § 1002(22). The Plan itself defines "retirement income" as "the monthly retirement income provided for by this Plan." Plan Section I, p. 4. Section V(2) is clear that the workmen's compensation offset "will be a credit against any Retirement Income or any other payments under this Plan." Thus, while the Plan is not specific as to what its draftsmen conceived to be the "normal retirement benefit" and the "accrued benefit", as those terms are employed in ERISA, there is no doubt that the normal pension payment calculation includes the offset.

■ When construing a contract the Court must look to the document as a whole. Here, the Plan speaks of "retirement income" in terms of amounts payable. Section V is a comprehensive provision relating to the computation of retirement benefits. The benefits payable under Subsection 1 cannot logically be separated from the remaining portions of Section V. Accordingly, the Court concludes that the normal retirement benefit under the Plan and the accrued benefit under the Plan are the benefit payments called for by the entire computation process of Section V. The plaintiffs may not prevail simply on the theory that Section V(1), standing alone, requires full payment to them of the sums they seek.[8]

This conclusion, however, merely starts the process of inquiry; it does not end it. Having determined that the Plan treats the workmen's compensation offset as an integral part of the normal retirement benefit, the question arises whether the offset violates the nonforfeitability provisions of 29 U.S.C. § 1053. It is not enough merely to determine that the Plan defines the normal retirement benefit as a certain sum, less any offset, and then conclude that the Plan beneficiary has received all he is entitled to.

It is necessary to inquire into the nature of the offset to see if it violates the Act. This much is clear from *Keller v. Graphic Systems of Akron, Inc.,* 422 F.Supp. 1005 (N.D. Ohio 1976). In that case the plan provided that benefits would be forfeited if an employee resigned and then went to work for any of the defendant's competitors. A former employee sued to recover his benefits when he reached early retirement age. While the case was governed by the effective date provisions of ERISA the court did observe that:

> "It would therefore appear that ERISA proscribes the forfeiture of an employee's vested rights to qualified plan benefits for engaging in employment competition with his former contributing employer upon separation from service."

*Id.* at 1008.

Accord: *Lewis v. Merrill Lynch, Pierce, Fenner & Smith,* 431 F.Supp. 271 (E.D.Pa. 1977); *Amory v. Boyden Associates,* 434 F.Supp. 671 (S.D.N.Y.1976). To hold that any forfeiture or suspension of benefits is permissible as long as it is sanctioned by the plan is to turn the entire statutory scheme upon its head.

A nonforfeitable claim is one

> "obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional and which is legally enforceable against the plan."

Plaintiffs' argument, stripped to its essentials, is that they have an unqualified right to their normal retirement benefit, which is aptly defined in Section V(1) and that the workmen's compensation offset imposes a condition on entitlement to that benefit which violates Section 203 because it does not come within one of the exceptions set out at 29 U.S.C. § 1053(a)(3).

---

8. This argument may well be an attempt by the plaintiffs to distinguish the instant case from *Carlson v. Bundy, supra,* where the Court held that there was no forfeiture because those retirees received all the payments they were entitled to under the plan. The conclusion the Court reached in *Carlson,* that an offset contained in a plan, if reasonable, is permissible, resulted from excessive attention to the phrase "under the plan" found in the definitional section of ERISA, 29 U.S.C. § 1002(22), (23). The proper question is not whether the plan's provisions are reasonable, but whether they are contrary to the statute. See discussion on page 452, *infra.*

Plaintiffs' position finds considerable support in *Riley v. MEBA Pension Trust,* 570 F.2d 406 (2d Cir. 1977). The plaintiff in *Riley* had been a port engineer for a shipping line for many years. Prior to his retirement he wrote the trustees of his pension plan to inform them he was being considered for a position with the U. S. Department of Commerce, Maritime Administration. He requested a waiver of a provision of the pension plan which stated that subsequent employment in the maritime industry would preclude payment of retirement benefits for the duration of his second employment. The trustees refused the waiver. After accepting the civil service job, he filed suit. The Second Circuit, per Judge Friendly, held that the fact that benefits were "suspended" instead of "terminated" was of no legal significance. As far as Mr. Riley was concerned the suspended benefits would never be paid to him. The Court ruled that:

> "as regards employer contributions, the employee's rights must be nonforfeitable if he has met certain conditions relating to age and years of service which Riley concededly has done. Section 3(19), 29 U.S.C. § 1002(19), defines 'nonforfeitable' as meaning, among other things, a claim 'which is unconditional and which is legally enforceable against the plan.' The provision of Article II A, § 13, quoted above, fn. 2, places a condition on Riley's claim to the monthly benefits to which he otherwise would be entitled and makes his claim legally unenforceable against the Plan; it thus constitutes a forfeiture within the meaning of ERISA."

*Id.* at 409.

With respect to the purposive argument made by those defendants that the decision for plaintiff would result in a windfall, and thus was not intended by Congress to be a forfeiture,[9] the court said:

"It is true that employment by the government in a task similar to that which port engineers perform for private employers may involve the same evil of 'doubledipping,' i. e., a pensioner's taking a job that would otherwise have been available to a member of the union who had not retired, as private employment would. The Trustees say that this was the evil at which Art. II A, § 13 was aimed, and they argue that § 203(a)(3)(B)(ii) [29 USC § 1053(a)(3)(B)(ii)] should be construed accordingly. But it would be sheer speculation to assume that Congress wished courts to depart so far from the ordinary meaning of its language; for all we know Congress might have been happy to have a body of skilled pensioners willing to work for the Government at federal salaries."

*Id.* at 410.

The parties are in serious disagreement as to the persuasive force of *Riley.* The plaintiffs contend that the case stands for the proposition that Section 203 must be strictly construed against a forfeiture. This reading of *Riley* focuses on the importance of permitting no condition subsequent to entitlement to benefits that are not specifically allowed by statute. Seen from this perspective the case at bar is easy to resolve. Congress has outlawed most subsequent limitations on the right to receive pension benefits, the workmen's compensation offset is such a condition subsequent, and it is not within the permitted exceptions of 29 U.S.C. § 1053(a)(3). Defendants argue that *Riley* is distinguishable from the case at bar because it involves a complete evasion of all pension obligations due to the employee's relationship to a third party. Here, defendants say, the plaintiffs' post-retirement income comes from the same funding source. The fact that the post-

---

9. The defendant argued that the case fell within one of the exceptions to the forfeiture requirement, that of later employment in the same industry, 29 U.S.C. § 1053(a)(3)(B)(ii). The court rejected this defense preferring to treat the language "same industry" in a colloquial, rather than a technical sense. Thus, working for the government in the maritime field was not employment in the same industry as a private shipping line. Defendants in the case at bar do not argue that the workmen's compensation offset falls within the terms of 29 U.S.C. § 1053(a)(3).

retirement payments come from different funds should not, in defendants' view, obscure the fact that, from one source or another, the defendants are paying an amount equal to the sum called for in Section V(1) of the Plan. A necessary entailment of defendants' position is that offsets which relate to state statutes, including the workmen's compensation acts, are different from offsets triggered by private sector considerations.

■ The legislative history accompanying the enactment of ERISA is hardly conclusive as to Congress' conception of the propriety of workmen's compensation offsets. It is clear that the law was enacted for the benefit of employees who had been victimized by inequitable plan provisions, or poorly funded plans. In its preamble to the Act, the Congress said its purpose was to

"protect interstate commerce, the Federal taxing power and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance."

29 U.S.C. § 1001(c).

Commenting on Congress' purpose, one court has observed:

"Our analysis begins by way of background, with the findings of Congress concerning the vesting requirements of the post-World War II private pension plans. Vesting refers to the nonforfeitable interest that an employee acquires in a pension plan, entitling him to pension benefits. . . . [A common failing of pre-ERISA plans was that] if service terminated prior to meeting the age or service requirements, many employees were denied benefits despite many years of employment, creating vividly documented 'difficulties and hardships.' The denial of pension benefits under such circumstances is, moreover, particularly inequitable since 'the pension contributions previously made on behalf of the employee may

have been made in lieu of additional compensation or some other benefits which he would have received . . .' The employee excluded from a pension thus gets the worst of both worlds: he works for years at a diminished salary in order to contribute to a pension fund and then, because of the failure to meet a restrictive vesting requirement, he is denied all pension benefits.

"The Congressional response to the abuses of employees by pension plans was to impose on private pension plans minimum vesting requirements that involve either graduated vesting or a relatively short service requirement prior to 100% vesting."

*Mosley v. National Maritime Union Pension & Welfare Plan*, 438 F.Supp. 413, 423–4 (E.D.Pa.1977) (citations omitted). *See Hewlett-Packard Co. v. Barnes*, 425 F.Supp. 1294, 1297 (N.D.Cal.1977).

This concern for the plight of the worker apparently prompted the broad nonforfeitability language of Section 203(a). The House Committee said:

"With the limited exceptions noted above, no rights once they are required to be vested may be lost by the employee under any circumstances . . . For example, a vested benefit is not to be forfeited because the employee later went to work for a competitor, or in some other way was considered 'disloyal' to the employer."

H.Rept. 93–807, 1974 U.S.Code Cong. & Admin.News, pp. 4725–6. See also H.Conf.Rept. 93–1280, 1974 U.S.Code Cong. & Admin.News, pp. 5052–3.

On the other hand there is language in the various reports which indicates that Congress may have been more concerned to ensure that workers would find at least minimal financial support upon their retirement than with any desire to prohibit forfeitures in all forms.

"Its most important purpose will be to assure American workers that they may look forward, with anticipation, to a retirement with financial security and dignity, and without fear that this period

of life will be lacking in the necessities to sustain them as human beings within our society."

H.Conf.Rept. 93–533, 1974 U.S.Code Cong. & Admin.News, p. 4646. See H.Rept. 93–807, 1974 U.S.Code Cong. & Admin.News, p. 4719.

■ In addition to this inconclusive picture from the legislative history, the Court must necessarily consider the sections of ERISA which integrate the Social Security Act into the national pension laws. In creating standards for qualified trust status for pension plans Congress said:

"A trust shall not constitute a qualified trust under this section unless under the plan of which such trust is a part, in the case of a participant or beneficiary who is receiving benefits under such plan . . . such benefits are not decreased by reason of any increase in the benefit levels payable under Title II of the Social Security Act . . ."

26 U.S.C. § 401(a)(15)(A).

This section has its counterpart in ERISA itself, 29 U.S.C. § 1056(b)(1).[10] Congress thus considered the relationship between some other statutory schemes and ERISA, prohibited certain offsets, but said nothing about others. Is the Court to conclude from this that the failure to prohibit workmen's compensation offsets should be understood as approval of the practice? This would be going too far. It is true that Congressional silence in this case is not positive evidence of an intention to outlaw the offset. Neither, however, is it a positive indication of an intention to approve it.

At best, the Court can conclude only that Congress spoke to the relation between certain federal retirement programs and ERISA. Its failure to refer to any state-mandated insurance programs cannot, in view of the policy of federalism and comity, be treated as any conclusive indicia of intent.[11]

■ The Court must look, as well, to the nature of workmen's compensation programs to discern the intent of Congress in this area. Different types of insurance programs serve differing needs of the American worker. Unemployment insurance reimburses a worker for loss of income due to non-medical causes; disability insurance compensates workers for lost income due to non-occupational illness; and workmen's compensation laws protect workers against the loss of income due to work-related illness. *Standard Oil of California v. Agsalud*, 442 F.Supp. 695 (N.D.Cal.1977). In Michigan, workmen's compensation is a comprehensive replacement of the traditional tort remedies and their attendant common-law defenses. *Cruz v. Chevrolet Grey Iron Div., General Motors Corp.*, 398 Mich. 117, 247 N.W.2d 764 (1976) (Opinion of Coleman, J.); *Sims v. R. D. Brooks, Inc.*, 389 Mich. 91, 204 N.W.2d 139 (1973). See M.C.L.A. §§ 418.131, 418.141. That this system has compensatory elements beyond mere wage replacement is evident in M.C.L.A. § 418.357 which provides for up to 50% reductions in benefits paid to persons between their 65th and 75th birthdays. Despite the relatively few individuals who can be expected to earn income during these years, the legislature has provided contin-

10. The text of the two statutes is almost identical. The only difference is that in Title 29 the Congress prohibited deductions for benefits payable under the Railroad Retirement Act of 1937 in addition to the Social Security Act.

11. This conclusion is especially strong in view of Congress' silence as to state workmen's compensation programs despite its presumed knowledge of their existence.

Nor do regulations by the Secretary of the Treasury compel a different result. The defendant points to Treasury Regulation 1.411(a)–4(a), adopted in 1977, which provides: "Furthermore, nonforfeitable rights are not considered to be forfeitable by reason of the

fact that they may be reduced to take into account benefits which are provided under the Social Security Act or under any other Federal or State law and which are taken into account in determining plan benefits." The Court cannot accept the contention of defendants that the Secretary of the Treasury has been given authority to make final interpretations of the statute. Nor can the Court say that this regulation is either of such long-standing or of such obviousness that failure to change the language by statute amounts to Congressional acquiescence in some administrative practice. See *Helvering v. Winmill*, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938).

ued benefits for them, presumably to compensate them, at least partially, for the added burden of their occupationally acquired disability.

■ Pensions, in contrast, represent deferred income, or other benefits foregone by the worker in hopes of a more secure retirement. See, e. g., *Mosley v. National Maritime Union Pension and Welfare Plan, supra.* A pension plan participant must labor for the employer for a period of time before acquiring vested benefits. Upon attainment of retirement age, he or she is entitled to the agreed-upon payments. A retiree receiving pension benefits who does not have a compensable disability is in a far different position than a retiree who has, for example, lost a limb. To hold as defendants contend, that each of these two hypothetical individuals is meant to receive the same post-retirement compensation is excessively short-sighted. A person who has lost his leg has suffered a greater disruption of his life than merely diminution of his earning capacity. If the Court were to accept the defendants' argument, both the healthy and the maimed retirees would receive the same post-retirement income even though the burdens on the two are clearly disparate.

■ The defendant asks the Court to deny the injured worker, who otherwise qualifies for workmen's compensation benefits, any such compensatory payments in the face of unambiguous statutory language which disapproves of any forfeiture.[12] The justification for this exception to the anti-forfeiture language of ERISA is the inference that since Congress explicitly approved offsets for Social Security payments, it must have intended to permit offsets for workmen's compensation payments. This inference, in turn, rests on the supposition that Congress meant to free employers from the responsibility of mak-

ing duplicative payments. Defendants' reasoning, however, is not convincing. As previously indicated, Congress has set forth a broad rule of nonforfeitability and then provided certain limited exceptions to it. In *Riley* and *Keller* this Congressional language has been construed in favor of workers. The Court is persuaded that Congress did not intend to exempt workmen's compensation payments from the nonforfeitability requirement of ERISA. Just as in the *Riley* case, the workmen's compensation offset provision of this pension plan places a condition on the plaintiffs' claim to monthly benefits which makes that claim legally unenforceable against the plan. It therefore constitutes a forfeiture as that term is used in ERISA. The language of the statute is clear and unambiguous. The reasoning of the defendant is tenuous and speculative. The Court chooses to follow the plain meaning of the statutory language. Plaintiffs are entitled to summary judgment.[13] The plaintiffs' motion for summary judgment is therefore granted, and the defendants' motion for summary judgment is denied. The Utility Workers Union of American is dismissed as a party plaintiff. Entry of judgment will be withheld pending the resolution of the class aspects of this litigation.

IT IS SO ORDERED.

---

12. As a technical matter, of course, the plaintiffs are not denied their workmen's compensation payments, but rather their pension is reduced an equivalent amount. Functionally, the result is the same as if the workmen's compensation payments were withheld. Significantly for purposes of this case, the method of the offset brings the case squarely within the contours of ERISA's forfeiture provisions.

13. This determination makes it unnecessary to consider plaintiffs' other claims that the offset provision contravenes ERISA.