Merl D. STONG et al., Plaintiffs,

v.

**BUCYRUS–ERIE COMPANY and Bucyrus Hourly Employees Retirement Plan, Defendants.**

No. 78–C–703.

United States District Court,
E. D. Wisconsin.

June 18, 1979.

---

Zubrensky, Padden, Graf & Bratt by James P. Maloney, Milwaukee, Wis., for plaintiffs.

Reinhart, Boerner, Van Deuren, Norris & Rieselbach by Paul V. Lucke, Milwaukee, Wis., and Seyfarth, Shaw, Fairweather & Geraldson by Allan Gunn, Chicago, Ill., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This case is before me for decision of the defendants' motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6), Federal Rules of Civil Procedure, and the plaintiffs' motion for partial summary judgment pursuant to Rule 56. The complaint charges a violation of section 203(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1053(a), arising from a provision in the company's pension plan which authorizes a reduction of pension benefits paid to retired employees who recover workers' compensation benefits. While the complaint also seeks injunctive relief and the recovery of sums lost due to operation of the workers' compensation offset, the plaintiffs' motion presents only the question of the validity of the offset provision.

The plaintiffs are "employees" of the defendant, Bucyrus-Erie Company, and "participants" in the defendant, Bucyrus Hourly Employees Retirement Plan, both within the meaning of 29 U.S.C. § 1002(6), (7). Following my order of March 19, 1979, the Secretary of the Treasury has intervened and filed a brief supporting the defendants' motion to dismiss.

There are no material facts in dispute. Resolution of the problem presented depends entirely on statutory interpretation. Although the defendants urge that summary judgment is premature at this time because they have not filed an answer to the complaint, the language of Rule 56(d) clearly indicates that the plaintiffs' motion is ripe for decision if no "material facts are actually and in good faith controverted." There is no dispute about the existence or content of the challenged workers' compensation offset provision, and therefore its validity under ERISA can now be determined.

The controversy centers around sections 3.1 and 3.11 of the company's pension plan, which provide:

*"Types of Pension Payments*

"3.1 A pension granted pursuant to Section 2 shall consist of

(a) a special initial pension amount (hereinafter 'special payment'), except in the case of any Participant eligible for a pension for permanent incapacity retirement or a deferred vested pension (or as provided in paragraph 6.6), and

(b) a regular pension amount (hereinafter 'regular pension'), payable in monthly installments except as otherwise provided in paragraph 3.14, provided in accordance with the provisions of this Section 3."

. . . . .

*"Deductions for Disability Payments*

"3.11 Any amount paid to or on behalf of any Participant on account of injury or occupational disease incurred in the course of his employment by the Company or any other employer causing disability in the nature of a permanent disability, whether pursuant to workmen's compensation, occupational disease or similar statutory law (except fixed statutory payments for the loss of, or 100% loss of use of, any bodily member or a benefit in the nature of an annuity, pension or payment of similar kind by reason of any law), shall be deducted from or charged against any regular pension otherwise

payable under this agreement; . . . ."

It is undisputed that these provisions, as well as the retirement plan itself, are part of a collective bargaining agreement. The complaint avers that these provisions run afoul of ERISA in three respects. The plaintiffs argue that workers' compensation offsets (1) operate as prohibited forfeitures within the meaning of 29 U.S.C. § 1053(a); (2) improperly reduce the company's funding obligations in violation of 29 U.S.C. § 1103(c)(1); and (3) effectively function as assignments of pension benefits contrary to 29 U.S.C. § 1056(d)(1).

This deceptively simple problem of statutory construction has already generated its fair share of conflicting case law. Three cases invalidating the offset are *Alessi v. Raybestos-Manhattan, Inc.*, Civ. No. 78–0434 (D.N.J. February 15, 1979); *Buczynski v. General Motors Corporation*, 456 F.Supp. 867, motion for reconsideration denied, 464 F.Supp. 133 (D.N.J.1978); and *Utility Workers Union v. Consumers Power Co.*, 453 F.Supp. 447 (E.D.Mich.1978). Three cases upholding the offset are *Bordine v. Evans Products Co.*, 453 F.Supp. 19 (E.D. Mich.1978); *Pavlovic v. Chrysler Corp.*, Civ. No. 7–70438 (E.D.Mich. January 10, 1978); and *Carlson v. Bundy Manufacturing Co.*, Civ. No. 6–72274 (E.D.Mich. August 18, 1977). After originally upholding the offset in the *Carlson* case, Judge Pratt changed his position and invalidated it in the *Utility Workers* case. 453 F.Supp. at 449 n. 3.

In resolving the motions now before me, I find it necessary to decide only one question: Does the workers' compensation offset provision in the defendants' pension plan function as a forfeiture within the meaning of 29 U.S.C. § 1053(a)? For the following reasons, I conclude that the challenged offsets do constitute forfeitures and must therefore fall before the clear statutory mandate. Accordingly, I shall not consider the plaintiffs' remaining two contentions.

In 29 U.S.C. § 1053(a), which sets forth ERISA's minimum vesting standards, Congress broadly commanded that

"Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition . . . an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions."

"Nonforfeitable" is defined by 29 U.S.C. § 1002(19) as "a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan." While certain exceptions are expressly made in subsection 1053(a)(3) to the nonforfeitability requirement, which are the only exceptions recognized in subsection 1002(19), none of these are applicable here, and the defendants have not so argued. My conclusion that Congress intended the rule of nonforfeitability to govern unless one of the express exceptions applies is fortified by reference to an explanatory statement submitted by the joint conference committee: "[E]xcept as outlined below [regarding the express exceptions], an employee's rights, once vested, are not to be forfeitable for any reason." H.R. No. 93–1280, *reprinted in* 1974 U.S.Code Cong. & Admin.News pp. 5038, 5052. *See Keller v. Graphic Systems of Akron, Inc.*, 422 F.Supp. 1005 (N.D.Ohio 1976).

The statute applies unambiguously to this case: the pension plan must provide that an employee's right to his normal retirement benefit is nonforfeitable; a nonforfeitable right is unconditional and legally enforceable against the plan; the workers' compensation offset provided in the defendants' pension plan imposes a condition subsequent on an employee's right to normal retirement benefits; the imposition of this condition makes an employee's claim forfeitable within the meaning of subsection 1002(19) and therefore violates subsection 1053(a). *See Riley v. MEBA Pension Trust*, 570 F.2d 406, 409 (2d Cir. 1977); *Utility Workers, supra*, at 456. In my opinion, no other

conclusion could be reached without seriously upsetting the intent of Congress as manifested in the plain meaning of the Act.

The defendants' position boils down to this: The workers' compensation reduction authorized by section 3.11 is integrated by section 3.1 into the formula for calculating the "normal retirement benefit" and "accrued benefit" "under the plan" within the meaning of 29 U.S.C. § 1002(22), (23), and it does not therefore constitute a forfeiture of benefits to which an employee has an unconditional right. One court's response to this contention was: "To hold that any forfeiture or suspension of benefits is permissible as long as it is sanctioned by the plan is to turn the entire statutory scheme upon its head, . . . ." *Utility Workers, supra*, at 452.

The defendants' argument that the challenged offsets are permitted benefit calculations rather than forbidden forfeitures rests on the twin assertions that (1) as shown by the legislative history, Congress was aware of and specifically endorsed a 1968 revenue ruling, Rev.Rul. 68–243, which declared that a workers' compensation offset provision did not defeat compliance with the antidiscrimination requirement of section 401 of the Internal Revenue Code (26 U.S.C.); and (2) Congress, by giving the Secretary of the Treasury authority in 29 U.S.C. § 1202(c) to formulate regulations interpreting 26 U.S.C. § 411 and 29 U.S.C. § 1053 (the minimum vesting standards), intended that the Secretary would hold the offset allowed under 26 U.S.C. § 401 also allowable under sections 411 and 1053. The Secretary argues in his brief that Treas. Reg. § 1.411(a)–4(a) accomplishes this purpose:

> "Furthermore, nonforfeitable rights are not to be considered to be forfeitable by reason of the fact that they may be reduced to take into account benefits which are provided under the Social Security Act or under any other Federal or State law and which are taken into account in determining plan benefits."

Citing Rev.Rul. 78–178, the Secretary contends that the above regulation has been construed to cover workers' compensation benefits, but this "convoluted skein of reasoning" encounters a number of insurmountable obstacles. *Buczynski, supra*, 464 F.Supp. at 135. "First, it is questionable that Congressional intent concerning 26 U.S.C. § 401 indicates anything at all about Congressional intent as to nonforfeitability under § 1053." *Ibid.* More importantly, by these arguments the defendants seek to imply an exception to the broad nonforfeitability rule which Congress failed to make even as it expressly made others.

With all due deference to the Secretary's authority in this matter, *see Helvering v. Winmill*, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938), I am constrained to conclude as did Judge Lacey in the *Buczynski* case:

> "Congress expected that pension benefits would generally be nonforfeitable, and that employees would forfeit benefits only under narrowly defined circumstances. Regulations promulgated must assist in achieving this goal. . . . Treas. Reg. § 1.411(a)–4(a), by impeding the attainment of this goal, is inconsistent with the statute." 464 F.Supp. at 136 (citations omitted). *See also Utility Workers, supra*, at 455 n. 11.

The error that the defendants have made is plainly revealed in the Secretary's brief. Urging me to reject the result reached in the *Utility Workers* case, the Secretary candidly states that "that Court gave too much weight to the statutory language. . . ." When called upon to construe a congressional enactment, according weight to the words Congress employed is the court's *first* duty. The application of this cardinal rule to the issue in this case was aptly stated in *Utility Workers*: "The language of the statute is clear and unambiguous. The reasoning of the defendant is tenuous and speculative. The Court chooses to follow the plain meaning of the statutory language." 453 F.Supp. at 456.

The defendants next propose to show the congressional intent behind § 1053(a) by calling the court's attention to a bill introduced in the Senate in 1979, S. 209. Section 205(h) of that bill would prohibit the work-

ers' compensation offset clause here in question. I am also referred to certain statements made in hearings conducted in connection with the Senate's consideration of a similar bill introduced in 1978 which was not favorably acted upon. The defendants argue that the introduction and consideration of these bills demonstrate congressional understanding that the challenged offsets are sanctioned by current law. As the Supreme Court has stated, however, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one, . . ." *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960), because "several equally tenable inferences could be drawn from the failure of the Congress to adopt an amendment in the light of the interpretation placed upon the existing law by some of its members, including the inference that the existing legislation already incorporated the offered change." *United States v. Wise*, 370 U.S. 405, 411, 82 S.Ct. 1354, 1359, 8 L.Ed.2d 590 (1962). *See United States v. Southwestern Cable Co.*, 392 U.S. 157, 170, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968); *Waterman S.S. Corp. v. United States*, 381 U.S. 252, 268–69, 85 S.Ct. 1389, 14 L.Ed.2d 370 (1965). I accordingly reject the invitation to depart from the clear language of the statute on such a speculative basis.

While I have decided that the plain wording of § 1053(a), read in connection with § 1002(19) disposes of the issue raised by the plaintiffs' motion, I pause to note that even if I were to look behind the statutory language to divine the intent of Congress, as the defendants urge me to do, I would still find it difficult to accept their proposed interpretation. For they ask me to conclude that, in the course of enacting a comprehensive remedial statute for the protection of the rights of workers to their earned retirement benefits, benefits which are essentially deferred compensation for services rendered, Congress left a gaping hole in its handiwork, allowing these benefits to be reduced proportionately when a retired worker successfully asserts a workers' compensation claim. However, workers' compensation benefits are intended to compen-sate an employee for suffering a job-related injury and are not intended to supply retirement security.

Under Wisconsin's workmen's compensation statute, Wis.Stat. § 102.01 et seq., a covered employee loses his right to sue his employer in tort and has significant limits placed upon the amount he may recover, in exchange for an almost assured recovery. I think it would be an unreasonable interpretation of ERISA and contrary to its spirit to conclude that Congress injected another trade-off into this intricate scheme, forcing an employee with a work-related injury to forego the relief provided by statute for such injury in order to preserve his retirement benefits. Clearly, the nonforfeitability rule, with its narrowly defined and carefully delimited exceptions, was aimed at precluding such a harsh dilemma.

The plaintiffs are entitled as a matter of law to a judgment that § 3.11 of the Bucyrus Hourly Employees Retirement Plan violates 29 U.S.C. §§ 1002(19) and 1053(a). The defendants' motion for dismissal is therefore denied. Other issues in the case remain to be decided. The individual plaintiffs seek to represent a class of similarly situated plan participants. Since the class aspects of this litigation have no bearing on the validity of the workers' compensation offset, I have postponed consideration on this issue. *See Utility Workers, supra*, at 449 n. 1. The issue of class-wide relief should now be resolved, and a briefing schedule will be established.

Therefore, IT IS ORDERED that the motion of the plaintiffs for partial summary judgment be and hereby is granted.

IT IS ALSO ORDERED that the motion of the defendants for dismissal be and hereby is denied.

IT IS FURTHER ORDERED that counsel may file submissions on the issue of class certification, including briefs and evidentiary materials where appropriate, under the following schedule:

(1) the plaintiffs' submissions should be served and filed within 21 days of this decision;

(2) the defendants' submissions should be served and filed within 14 days thereafter;

(3) the plaintiffs' reply submissions, if any, should be served and filed within 10 days thereafter.