Robert **SPITZLER**, Plaintiff,

v.

**NEW YORK POST CORPORATION,**
Defendant.

No. 79 Civ. 2797–CLB.

United States District Court,
S. D. New York.

Sept. 18, 1979.

Gordon & Shechtman, P. C., by Murray A. Gordon, New York City, for plaintiff.

Squadron, Ellenoff, Plesent & Lehrer, by Ira Lee Sorkin, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By motion docketed July 3, 1979 and fully submitted for decision on July 24, 1979, defendant seeks an order dismissing the complaint pursuant to Rule 12(b)(1) or (6), F.R.Civ.P. on the grounds that (1) the Court lacks subject matter jurisdiction; or (2) the complaint fails to state a claim upon which relief can be granted. Both parties having filed supplementary affidavits which this Court has taken into consideration, the motion shall be treated as seeking summary judgment and disposed of in accordance with Rule 56, F.R.Civ.P.

The complaint, filed June 6, 1979, alleged violations of § 203(a)(2)(B), 29 U.S.C. §§ 1053(a), (2)(B) and 403(c)(1), 29 U.S.C. § 1103(c)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA") arising out of the reduction by defendant employer of the agreed severance pay due and owing plaintiff employee by the amount of the present value of the accrued vested interest of plaintiff in his pension entitlement.

Subject matter jurisdiction is founded upon § 502 of ERISA, 29 U.S.C. § 1132, authorizing a civil action by a participant of an "employee pension benefit plan" or "pension plan" to obtain appropriate relief for violations of the Act.

The relevant facts are not in dispute. Plaintiff Robert Spitzler had been an employee of defendant, New York Post Corporation (the publisher of the *New York Post*, which was sold to other interests. Defendant is now known as News Group Publications, Inc.) On May 4, 1978, at the age of 47, and after approximately 17 years of service, he was involuntarily terminated by the defendant. Plaintiff then held the position of Assistant Managing Editor, and under the terms of the written plan of New York Post Corporation for Severance Pay and Vacation Pay for Executive Personnel ("Severance Agreement"), would have been entitled to severance pay upon such termination in the amount of $55,000.00. Paragraph 2(c) of the Severance Agreement, however, states that "(c) The employee shall be entitled to receive only that amount by which the severance benefit . . . exceeds the actuarial value of his accrued vested benefit under the Pension Plan."

Plaintiff, by virtue of his participation in The New York Post Corporation Employees' Pension and Retirement Plan ("Pension Plan"), had an accrued vested interest in his pension entitlement the actuarial value of which amounted to $26,112.00. Defendant deducted this amount from the $55,000.00 severance payment pursuant to ¶ 2(c) of the Severance Agreement and paid plaintiff $28,888.00 as severance pay.

Plaintiff alleges that the reduction in his severance pay, in effect, constituted (1) a forfeiture of his vested pension benefit in violation of § 203(a) of ERISA, 29 U.S.C. § 1053(a); and (2) a diversion of plaintiff's vested pension benefit owed by the defendant in violation of § 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1), to the extent that the present value of that pension benefit was used to reduce the severance pay obligation of the defendant to the plaintiff.

■ These allegations are sufficient to sustain this Court's subject matter jurisdiction under § 502 of ERISA, 29 U.S.C. § 1132, despite the fact that there may be a failure to state a claim upon which relief can be granted. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1945). So much of the defendant's motion as seeks a dismissal for want of subject matter jurisdiction is denied.

In considering whether plaintiff states a claim, it is necessary to consider the purposes and language of ERISA. ERISA was enacted to regulate employee pension plans. A stated concern of Congress was that "many employees with long years of employment are losing anticipated retirement benefits owing to lack of vesting provisions in such plans." § 2(a) of ERISA, 29 U.S.C. § 1001(a). Meeting this problem, § 203 of ERISA, 29 U.S.C. § 1053, in pertinent part, provides minimum vesting standards as follows:

"(a) Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.

(1) A plan satisfies the requirement of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.

(2) A plan satisfies the requirements of this paragraph if it satisfies the requirements of subparagraph (A), (B), or (C).

(A) A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions."

The term "nonforfeitable" is defined in § 3 of ERISA, 29 U.S.C. § 1002 as: "(19) . . . a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan. . ."

■ The Pension Plan of the defendant complies with the vesting requirements of ERISA. In addition, it provides at § 3.02 that

"An Employee may retire on an 'Early Retirement Date,' which shall be the first day of the month coincident with or next following his fifty-fifth (55th) birthday . . .; provided, however, that to be eligible to retire on an Early Retirement Date, an employee must have completed at least ten (10) years of service prior to such date."

Thus plaintiff is eligible under the Pension Plan to obtain his pension benefits at age 55, and the fact that this plaintiff was terminated does not affect his eligibility. Section 5.02 of the Pension Plan provides that

"An Employee whose employment terminates at any time after completion of ten (10) years of service but who has not yet attained age fifty-five (55) . . . shall be entitled to elect a pension commencing on the first day of any month after attaining age fifty-five (55)."

In spite of the Pension Plan's apparent compliance with ERISA, plaintiff insists that the Severance Agreement offset provision constitutes a forfeiture under ERISA. Plaintiff, who became an executive employee of the defendant on March 9, 1970, had a compensation package which included both pension and severance plans. Prior to 1977, severance benefits were paid only if an employee waived his vested pension plan benefits. When ERISA was enacted in 1976, the defendant's counsel advised it that this waiver provision might render the Pension Plan "subject to disqualification for tax purposes." In November 1977, the defendant amended the 1972 Severance Agreement, deleting the waiver provision and replacing it with the current offset provision. Plaintiff endorsed this revision on November 23, 1977. He now claims that the offset provision of the revised Agreement has the same practical effect as the waiver of pension benefits under the pre-'77 Severance Agreement. His argument is, in effect, that since it would be a forfeiture to offset pension payments by the amount of severance payments, it must be a forfeiture to offset severance payments by the pension entitlement. Plaintiff accuses defendant of trying to accomplish indirectly what it could not do directly. He feels that the invalidity of the original waiver provision and the current offset provision entitle him to receive in full the basic severance pay benefit *and* his vested pension benefit.

Plaintiff claims that the reduction may, depending on future events, constitute a total forfeiture. Under the terms of the Pension Plan, if plaintiff dies before reaching the retirement age of 55, he will not receive any benefits under the Pension Plan, yet defendant will have taken a credit against the Severance Agreement benefits payable to plaintiff for payments never received by him.

Plaintiff relies predominantly on two cases to support his contentions, *Riley v. MEBA Pension Trust*, 570 F.2d 406 (2d Cir. 1977) (hereinafter "Riley I"); opinion after remand reported at 586 F.2d 968 (2d Cir. 1978) ("Riley II"); and *Utility Workers Union v. Consumers Power Co.*, 453 F.Supp. 447 (E.D.Mich.1978). In *Riley I* the Court of Appeals held that on the facts before the Court, the suspension of pension payments because of a former employee's subsequent employment constituted a forfeiture under ERISA. Plaintiff relies on *Riley I* to show that the rule of nonforfeitability of vested benefits applies regardless of the pension plan participant's collateral income. The *Riley* case, however, is inapposite to the facts now before this Court. Riley's claim asserted his eligibility to receive pension payments at the time the suit was brought. After *Riley I* was remanded by the Second Circuit, the district court determined that, in fact, under ERISA, Mr. Riley would not be qualified to receive such payments until he reached "normal retirement age," [see *Riley II*, 586 F.2d 968, 970 (2d Cir. 1978)], and that the nonforfeitability provisions of ERISA, do not apply to one who has not yet attained "normal retirement age." See also, *Capocci v. General Motors Corp.*, 444 F.Supp. 1306, 1308 (D.Hawaii 1978).

In the present case, Mr. Spitzler will not become entitled to receive his pension payments until he reaches the age of 55.

The retired employees in *Utility, supra,* had their benefits reduced because of offsets for payments received under the Michigan Workers' Compensation Act. 453 F.Supp. 448–49. The Court found that this constituted an invalid forfeiture under ERISA. Even though the defendant funded the entire cost of both benefit programs, *Id.* at 450, n.4, and in the absence of the offset, the payments to some individuals would "exceed the salary they earned while working," *Id.* at 450, the Court found that the two types of insurance served different purposes and stated that the plaintiffs were entitled to receive both payments, *Id.* at 455–56. The present case differs from *Utility* in one very critical respect. In *Utility*, the workmen's compensation benefit was required by state law; thus, these payments could not be reduced. Instead, the defendant in *Utility* reduced the pension entitlement, which was forbidden by ERISA. In the instant case, these severance payments are not required by law. They are purely contractual in nature.

It is clear that if there were no offset provided for in the contractual provisions of the Severance Agreement, plaintiff would receive $55,000.00 in severance pay, instead of $28,888.00. But the fact remains that there has been no diminution in his *pension* entitlement. Plaintiff will be entitled to receive his pension benefits when he reaches the age of 55. He has no right to these payments now. His sole dissatisfaction, therefore, is with the agreed terms of the separate Severance Agreement which he entered into with the defendant.

The forfeiture provision, § 203 of ERISA, 29 U.S.C. § 1053, applies by its terms only to a "pension plan." The term "pension plan" is defined in § 3(2) of ERISA, 29 U.S.C. § 1002(2) as:

"[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

(A) provides retirement income to employees, or

(B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan."

Regulation 29 C.F.R. § 2510.3–2(b), promulgated by the Department of Labor pursuant to § 505 ERISA, 29 U.S.C. § 1135, and recently amended [1979], 228 Pension Rep. (BNA) R–3, sets forth the circumstances in which a severance plan is not deemed to be a pension plan under ERISA. The regulation states:

"(b) *Severance pay plans.*

(1) For purposes of Title I of the Act and this chapter, an arrangement shall not be deemed to constitute an employee pension benefit plan or pension plan solely by reason of the payment of severance benefits on account of the termination of an employee's service, provided that:

(i) Such payments are not contingent, directly or indirectly, upon the employee's retiring;

(ii) The total amount of such payments does not exceed the equivalent of twice the employee's annual compensation during the year immediately preceding the termination of his service; and

(iii) All such payments to any employee are completed,

(A) In the case of an employee whose service is terminated in connection with a limited program of terminations, within the later of 24 months after the termination of the employee's service, or 24 months after the employee reaches normal retirement age; and

(B) In the case of all other employees, within 24 months after the termination of the employee's service.

(2) For purposes of this paragraph (b),

(i) 'Annual compensation' means the total of all compensation, including wages, salary, and any other benefit of monetary value, whether paid in the form of cash or otherwise, which was paid as consideration for the employee's service during the year, or which would have been so paid at the employee's usual rate of compensation if the employee had worked a full year.

(ii) 'Limited program of terminations' means a program of terminations:

(A) Which, when begun, was scheduled to be completed upon a date certain or upon the occurrence of one or more specified events;

(B) Under which the number, percentage or class or classes of employees whose services are to be terminated is specified in advance; and

(C) Which is described in a written document which is available to the Secretary upon request, and which contains information sufficient to demonstrate that the conditions set forth in subclauses (A) and (B) of this clause (ii) have been met."

The Severance Agreement between plaintiff and defendant is not a pension plan under this standard.

■ In its statement accompanying the amended regulation, the Department of Labor also pointed out that "a severance pay plan which meets the conditions of the regulation, and thus is not a pension plan under section 3(2) of ERISA, may nonetheless constitute an employee welfare benefit plan under section 3(1) of ERISA." . . .

"A plan which is a welfare plan but not a pension plan under Title I of ERISA is subject to Part 1 of that title (relating to reporting and disclosure), as well as Part 4 (relating to fiduciary responsibility) and Part 5 (relating to administration and enforcement). *Such a plan is not, however, subject to Parts 2 and 3 of Title I (relating to participation, vesting, and funding)." Id.* at R–5. Emphasis added. This Court expresses no opinion as to whether the Severance Agreement is an employee welfare benefit plan. We quote the Department's statement merely to indicate that in the view of those charged with administering the Act, the vesting provisions of ERISA are inapplicable to such a plan. The Department's opinion is persuasive, and while not controlling, is entitled to great deference. See, e. g., *Perine v. William Norton & Company, Inc.*, 509 F.2d 114, 120 (2d Cir. 1974).

■ There has been no forfeiture of plaintiff's pension entitlement. While there has been a substantial diminution in the formula for computing his severance payment, such a forfeiture does not come within the protection of ERISA. Thus, plaintiff has failed to state a claim under § 203(a) of ERISA, 29 U.S.C.A. § 1053(a) upon which relief may be granted.

■ Plaintiff also alleges that the defendant benefits from the offsetting of plaintiff's severance payments by his pension entitlement in violation of § 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1), which provides (with certain exceptions not relevant here) that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

Plaintiff argues that if he were not eligible for pension benefits, he would have been entitled to a severance payment of $55,000.00. He treats this amount as a fixed obligation of the defendant and argues that since under the formula of the post ERISA Severance Agreement this amount was reduced by the actuarial value of the vested and accrued pension benefit, defendant "used" plaintiff's pension benefit. Plaintiff's analysis of the result of his acceptance of the Severance Agreement ignores the fact that pursuant to the express terms of the Severance Agreement, the amount of defendant's obligation to plaintiff is $28,888.00 and not $55,000.00. That defendant has benefited by paying plaintiff less than $55,000.00 is a function of the terms of the Severance Agreement and does not affect plaintiff's pension rights. Accordingly, plaintiff has failed to state a claim under § 403 of ERISA upon which relief may be granted. Nor is the Severance Agreement, as plaintiff asserts, an invalid "assignment" or "alienation" of plaintiff's pension benefits under § 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1) and Treasury Regulation 1.401(a)–13(c). 26 C.F.R. § 1.401(a)–13(c) (1978).

For these reasons, summary judgment is granted dismissing the claim pursuant to Rule 56, F.R.Civ.P. The Clerk will enter a final judgment accordingly, pursuant to Rule 58(1), F.R.Civ.P.

So ordered.