958

The EMPLOYEE BENEFITS COMMITTEE of the RETIREMENT SYSTEM OF HAWAIIAN TELEPHONE COMPANY, and Hawaiian Telephone Company, Plaintiffs,

v.

Eleanor PASCOE, Edward Young, Edmund Lin, Frank Yee, Cornelio Kaai, James Jeremiah, and Local 1357, IBEW, Defendants.

Civ. No. 78–0483.

United States District Court, D. Hawaii.

Dec. 15, 1980.

Jared H. Jossem, Roger W. Fonseca, J. George Hetherington, Torkildson, Katz, Jossem & Loden, Honolulu, Hawaii, for plaintiffs.

Edward H. Nakamura, Herbert R. Takahashi, King, Nakamura, Nakamura & Takahashi, Honolulu, Hawaii, for defendants.

## MEMORANDUM AND ORDER

SAMUEL P. KING, Chief Judge.

This action was brought under section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132 (1975), by the Employee Benefits Committee of the Retirement System of Hawaiian Telephone Company ("committee") and Hawaiian Telephone Company ("company"). Plaintiffs seek a declaratory judgment confirming their right to offset benefits received by defendants under the Hawaii Workers' Compensation Law, Hawaii Rev.Stat. §§ 386-1 to 386-142 (1976), against benefits due defendants under the Retirement System of Hawaiian Telephone, the company pension plan ("plan").[1] Plaintiffs also seek return of a lump sum allegedly overpaid to defendant Pascoe and an alleged overpayment to defendant Jeremiah due to an increase in Jeremiah's workers' compensation benefit. Section 502, subsections (e)(1) and (f), confers jurisdiction on this Court to decide matters brought pursuant to the Act.

The case is before this Court on cross motions for summary judgment. No material issues of fact remain in dispute.

Each of the defendants is covered by the plan and is receiving or has received in a lump sum benefits under the plan. Each of the defendants has received or is receiving his own contributions to the plan. These are not at issue here. At issue is the right of plaintiffs to apply the plan's "offset" provision, found in art. VI, par. 7, of the 1976 revision of the plan and section 3, subsection 11, of the 1973 revision of the plan and which reads:

Any amounts paid or payable by the Company or as the result of premiums or taxes paid therefore by the Company, under the provisions of the Hawaii Workers' Compensation Law or any similar law, to an employee or Retired Employee or to his dependents on account of his service, any Disability or death shall be offset against and payable in lieu of any benefits payable out of funds provided from contributions of the Company under the provisions of this System on account of the same service, Disability or death. In case the present value of the total commuted benefits under the Hawaii Workers' Compensation Law or any similar law is less than the present value of any benefits otherwise payable from funds provided from contributions of the Company under the provisions of the System, then the present value of the commuted payments under the Hawaii Workers' Compensation Law or any similar law shall be deducted from the present value of these benefits and such benefits as may be provided by the remainder shall be payable under the provisions of these Rules.

## 1. FACTS

### a. Eleanor Pascoe

Charles Pascoe, a long-time employee of the company, suffered a heart attack on

---

[1] The plan is administered by the company through the committee which consists of three to five members who are appointed by and serve at the pleasure of the Board of Directors of the company.

June 8, 1974, that resulted in his death on June 18, 1974, at the age of 52. Pursuant to a provision of the plan, Charles Pascoe's widow, Eleanor Pascoe, received on July 11, 1974, a lump sum payment of $12,655.00 as a return of her husband's employee contributions to the plan, plus interest. She also received a second lump sum payment of $30,277.28 as an accidental death benefit derived from the company's contributions to the plan.

Mrs. Pascoe was subsequently awarded workers' compensation dependency benefits by the Director of Labor and Industrial Relations, State of Hawaii, on March 24, 1976. The company and the insurance carrier responsible for payment of the award appealed the decision to the Labor and Industrial Relations Appeal Board.[2] The only issue litigated on appeal was whether the company should be permitted to offset the accidental death benefits paid under its pension plan against the awarded compensation. Citing the "strong policy expressed in Chapter 386 (of the Hawaii Revised Statutes) against the diminution or cancellation of compensation liability through any means," the Appeals Board denied the company's appeal.[3] Though Mrs. Pascoe was awarded $35,100.00, her lump sum recovery and weekly benefits totalled only $22,601.79 due to termination of weekly benefits upon her remarriage on August 26, 1977. Defendants seek recovery of the $22,601.79 as an offset against the plan benefits she collected. Mrs. Pascoe is now a resident of the State of Tennessee.

b. *Edward Young*

On August 17, 1977, at age 61 and with more than 31 years of service, Edward Young chose to retire from the employ of the company because he was over the normal retirement age of 60 and had sustained a permanent disability. Young elected to withdraw his accumulated employee contributions and received them, with interest, in a lump sum payment of $4,206.04. Young was eligible to receive a Service Retirement Allowance under the plan, and elected to receive the benefit in the form of a single-life annuity payable at $120.93 per month. Subsequently, he was awarded temporary total disability benefits under workers' compensation in the amount of $167.00 per week. The company, through the committee, applied the offset provision and terminated payment of pension benefits when workers' compensation benefits commenced because the workers' compensation benefits exceeded what he was entitled to receive in pension benefits. Plaintiffs seek a declaratory judgment on the validity of the offset provision and their application of it to Young.

---

**2.** The Board is the state agency delegated the power to determine appeals from initial workers' compensation decisions. Hawaii Rev.Stat. § 386–87 (1976). Judicial review of decisions of the Board lies only in the Supreme Court of Hawaii, Hawaii Rev.Stat. § 386–88 (1976).

The appeal in the Pascoe case was prosecuted solely by the company.

**3.** The Board cited the following sections of Chapter 386, Hawaii Revised Statutes, in support of the denial:

§ 386–9 Contracting out forbidden. Except as provided in § 386–78, no contract, rule, regulation or device whatsoever shall operate to relieve the employer in whole or in part from any liability created by this chapter;

§ 386–57 Legal status of right to compensation and compensation payments. (a) The right to compensation under this chapter shall not be assignable, and the right to compensation and compensation payments received shall be exempt from the reach of creditors;

(b) The right to compensation under this chapter shall have the same status as a lien or the same priority for the whole thereof with respect to the assets of the employer as are accorded by law to any unpaid wages for labor; and

§ 386–129 Employees not to pay for insurance; penalty. No agreement by an employee to pay any portion of the premium paid by his employer, or to contribute to a benefit fund or department maintained by the employer, or to the cost of mutual or other insurance maintained for or carried for the purpose of securing compensation as herein required, shall be valid; and any employer who makes a deduction for that purpose from the wages or salary of any employee entitled to the benefits of this chapter shall be fined not more than $250.

*Deps. of Charles Pascoe, Dec'd. v. Hawaiian Telephone Co.*, Case No. AB–76–86, Decision and Order, Labor and Industrial Relations Appeals Board, State of Hawaii, March 15, 1977.

#### c. *Edmund Lin*

On September 1, 1977, at age 53 and after seven years of service, Edmund Lin was terminated from employment of the company because of a permanent disability. Lin was terminated by unilateral action of the company as provided for in the plan.[4] He elected to withdraw his employee contributions and received them, with interest, in a lump sum payment of .$700.68. Lin elected also to receive an Accidental Disability Retirement Benefit ("disability benefit") in the form of a 100% joint and survivor annuity payable for his life and that of his surviving spouse at the rate of $239.56 per month. Subsequently, he was awarded temporary total disability benefits under the workers' compensation law in the amount of $90.93 per week. Because the temporary compensation benefits exceeded the pension entitlement, the company terminated the payment of pension benefits upon commencement of payment of workers' compensation benefits. Plaintiffs seek a declaratory judgment that this offset is valid.

#### d. *Frank Yee*

On September 10, 1977, at age 53 and with more than 25 years of service, Frank Yee was terminated by unilateral action of the company because of a permanent disability. Yee elected to withdraw his employee contributions and received them, with interest, in a lump sum payment of $11,769.76. He was eligible to receive a disability benefit under the plan and received such benefit in the form of a single-life annuity payable at the rate of $799.95 per month. On September 13, 1977, Yee was awarded workers' compensation benefits of $112.50 per week payable by the employer up to a maximum liability of $35,-100.00. An additional benefit of $112.50 per week payable out of the Special Compensation Fund[5] will commence if the maximum liability of the employer is reached and continue through the duration of his disability. The workers' compensation benefit of $112.50 per week is being offset against Yee's disability benefit so that he is receiving the balance of $290.45 per month from the plan. Plaintiffs seek a declaratory judgment that this offset is valid.

#### e. *Cornelio Kaai*

On December 1, 1977, at age 52 and with seven years of service, Cornelio Kaai was unilaterally terminated by the company because of a permanent disability[6] and elected to allow his employee contributions to remain in the plan, thereby increasing any pension benefit payable to him. Kaai was eligible to receive a disability benefit and elected to receive it in the form of a 50% joint and survivor annuity payable for his life at the rate of $463.01 per month, of which $452.42 would be attributable to employer contributions and $10.54 would be attributable to his own contributions, and for the life of his surviving spouse at the rate of $231.50 per month. On September 6, 1978, the Workers' Compensation Division awarded Kaai a benefit of $112.50 per week for the duration of his disability. Because that benefit exceeded the portion of the disability benefit attributable to employer contributions otherwise payable under the plan, the committee suspended payment of that portion until such time, if ever, as the payments from the plan exceed the workers' compensation award. Kaai is therefore only receiving the $10.59 per month attributable to his own contributions. The benefits Kaai is receiving are temporary total disability benefits. Plaintiffs seek a declaratory judgment that this offset is valid.

---

**4.** Despite its termination of Lin based on permanent disability, the company contended at the workers' compensation hearing that Lin was not totally disabled for work and in fact had suffered only a minimal permanent partial disability.

**5.** The special compensation fund, established and maintained under the workers' compensation law, Hawaii Rev.Stat. § 386–151, is funded by contributions made by employers as required by other provisions of the law.

**6.** The company contended at the workers' compensation hearing that Kaai was not permanently totally disabled for work.

#### f.  James Jeremiah

On December 1, 1977, at age 55 and with 34 years service, James Jeremiah was terminated by unilteral action of the company because of a permanent disability. Jeremiah elected to allow his employee contributions to remain in the plan, thereby increasing the pension payable to him. He was also eligible to receive a disability benefit and elected to receive it in the form of a 50% joint and survivor annuity payable to him at the rate of $620.90 per month of which $511.16 would be attributable to employer contributions and $109.74 would be attributable to his contributions, and for the life of his surviving spouse at the rate of $310.45 per month.

Jeremiah initially was awarded workers' compensation benefits of $75.00 per week.[7] On March 8, 1978, the award was increased to $100.27 per week.[8] Neither the company nor the committee was aware of the increase. From Jeremiah's termination on December 1, 1977, through October 31, 1978, the $75.00 per week was set-off against Jeremiah's disability benefit and he received a balance of $295.90 per month from the plan. The plan is now offsetting the full workers' compensation benefit against the pension benefit and, along with declaratory relief, plaintiffs seek the return of an alleged total overpayment of $1,204.50 plus interest.[9]

Local 1357, International Brotherhood of Electrical Workers (IBEW) raised grievances on behalf of defendants Young, Lin, Yee, Kaai and Jeremiah alleging invalidity of the offset provision under ERISA. These grievances are still pending and awaiting the outcome of this declaratory action. No grievance was raised on behalf of Eleanor Pascoe since her husband was a supervisory employee not represented for collective bargaining purposes by the union. On August 1, 1977, plaintiffs filed *The*

*Retirement System of Hawaiian Telephone v. Eleanor Pascoe*, Civil No. 52214, in the Circuit Court of the First Circuit, State of Hawaii, seeking the same relief sought here. After Pascoe filed motions to dismiss and/or for summary judgment, the parties stipulated to a dismissal without prejudice, apparently to allow the plaintiffs to file in federal court against the several defendants against whom offsets were being carried out.

#### 2.  Employee Retirement Income Security Act (ERISA)

Plaintiffs seek declaratory relief establishing that the offset provision is legal, binding upon defendants and other participants and beneficiaries under the plan, and that its enforcement is incumbent upon the committee as the fiduciary responsible for enforcing the plan. They claim that failure to carry out such offsets would injure the company by requiring it to increase its contributions beyond those contemplated by the company and the union during collective bargaining. For all defendants except Pascoe the company's claim is based on its assertion that the offset provision does not contravene section 203(a) of ERISA, 29 U.S.C. § 1053(a) (1975), which provides:

> Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age....

Section 203(a)(1) further provides that in order to satisfy the section, each pension plan must provide that "... an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable." 29 U.S.C. § 1053(a)(1) (1975). Section 203(a)(1) is not at issue here since all the defendants are receiving or have received their employee contributions.

---

7.  The company contended at the workers' compensation hearing that Jeremiah was not permanently totally disabled for work.

8.  The company was ordered to pay weekly compensation of $100.27 for 90% of permanent total disability for 224.3941 weeks for a total of $22,500.00. Beginning July 7, 1979, the Special Compensation Fund paid $100.27 weekly for the duration of the disability.

9.  This sum is calculated by plaintiffs as an alleged overpayment of $109.50 per month for a total of eleven months.

A plan must satisfy paragraphs (1) *and* (2) under section 203(a). To satisfy paragraph (2), a plan must satisfy subparagraph (A), (B), or (C). The combination of provisions incorporated into a plan under section 203(a)(1) and (2) constitute the minimum vesting standards for that plan. That is, in order to meet minimum vesting requirements, a plan must provide that an employee's right to his normal retirement benefit upon reaching normal retirement age is nonforfeitable (vested), and that an employee's right in his accrued benefit derived from his own contribution is nonforfeitable, and the plan also must provide one of the alternatives under subparagraphs (A), (B) or (C). The latter provision in a plan is commonly referred to as alternative vesting. The plan here incorporated subparagraph (A). That provision reads:

> (A) A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions.

Plaintiffs base their contention that the offset does not contravene section 203(a) on section 401(a)(5) of the Internal Revenue Code, 26 U.S.C. § 401(a)(5) (1978), a provision that plaintiffs claim allows such an offset. Plaintiffs also rely on treasury regulations promulgated under section 401(a)(5).

Defendants assert that the clear language of ERISA's minimum vesting and nonforfeiture provisions, prohibition against alienation of benefits, and express policy to protect the interests of participants and their beneficiaries by requiring vesting of accrued benefits show that the offset provision is void under ERISA. They argue that the label "offset" should not fog the true nature of this "forfeiture".

### a. ERISA Coverage

■ Before taking up these arguments, it is necessary to examine the application of ERISA to the defendants. Plaintiffs concede that ERISA's nonforfeiture provisions apply to all the defendants except Mrs. Pascoe. For plans in existence on January 1, 1974, ERISA provides for its application in cases of plan years beginning after December 31, 1975, 29 U.S.C. § 1061(b)(2) (1975). Since Charles Pascoe died and Eleanor Pascoe received her pension benefits in 1974, ERISA, but its terms, does not apply to her benefits, *Keller v. Graphic System of Akron, Inc.*, 422 F.Supp. 1005, 1008-1009 (N.D.Ohio 1976); *Martin v. Bankers Trust Co.*, 417 F.Supp. 923, 925-926 (W.D.Va. 1976); *Barcelona v. Fox Grocery Co. Emp. Pen. Plan*, 483 F.Supp. 1128, 1131 (W.D.Pa. 1980); *Fox v. Merrill Lynch & Co., Inc.*, 453 F.Supp. 561, 565-566 (S.D.N.Y.1978); *Savoretti v. Hotel & Restaurant Emp. & Bartenders*, 470 F.Supp. 1286, 1290 (S.D.N.Y. 1979); *Schlansky v. United Merchants & Manufacturers, Inc.*, 443 F.Supp. 1054, 1063-1064 (S.D.N.Y.1977). The gradual changes in rules governing pension plans under ERISA were carefully structured by Congress with a wide variety of effective dates, and the intent of Congress to give the law only prospective application is clear, *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 721-722, n. 40, 98 S.Ct. 1370, 1382, n. 40, 55 L.Ed.2d 657 (1977); *Nolan v. Meyer*, 520 F.2d 1276, 1278 (2d Cir. 1975). *See also Wilson v. Board of Trustees, Inc.*, 564 F.2d 1299, 1302 (9th Cir. 1977).

Defendants nevertheless claim that, though collection of benefits occurred in 1974, Mrs. Pascoe did not apply for and receive workers' compensation benefits until after January 1, 1976, the effective date of ERISA for this plan. They argue that the section 203 standards apply to the offset against Mrs. Pascoe's pension benefits and prohibit the forfeiture. Accepting this interpretation makes the answer turn on when Mrs. Pascoe received workers' compensation benefits rather than on the effective date of the plan and when her pension benefits were paid. Such a strained interpretation is directly contrary to the clear intent of Congress in establishing the effective dates for ERISA provisions. Defendants' claims based on forfeiture and minimum vesting under ERISA do not apply to the Pascoe situation.

b. Nonforfeiture

■ For circumstances similar to the instant one, other federal courts have taken various paths to decide whether similar offsets were or were not forfeitures under ERISA. A careful analysis of these cases leads this Court to conclude that a forfeiture has occurred here.

Under 29 U.S.C. § 1002(19):

The term 'nonforfeitable' when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan. For purposes of this paragraph, a right to an accrued benefit derived from employer contributions shall not be treated as forfeitable merely because the plan contains a provision described in section 1053(a)(3) of this title.

The clear meaning of these words indicates that a forfeiture occurs whenever a company takes away the right to receive full benefits to which an employee is entitled under a plan.

The United States Supreme Court recently gave a broad interpretation to the nonforfeitability provision in ERISA in holding that vested benefits under a plan are nonforfeitable in spite of a plan provision that limited benefits to the amounts that could be provided from the assets of the fund. *Nachman Corp. v. Pension Ben. Guaranty Corp.*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980). In referring to deprivation of benefits to employees due to termination of pension plans, the Court stated:

Congress wanted to correct this condition by making sure that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—that he actually receive it.

*Id.* 100 S.Ct. at 1733. The legislative history of ERISA also supports a broad interpretation of the nonforfeitability language. For example, the House Conference Report indicates that "[U]nder the conference substitute, except as outlined below, an employee's rights, once vested, are not to be forfeitable for any reason." [10]

Plaintiffs' argument that the offset does not constitute a forfeiture is based on two provisions in the Internal Revenue Code (IRC): (1) section 411 of the IRC, 26 U.S.C. § 411 (1978), and Treas.Reg. § 1.411(a)–4(a) promulgated under it and (2) section 401(a)(5) of the IRC, 26 U.S.C. § 401(a)(5) (1978). Plaintiffs contend that both of these provisions authorize such an offset and both are valid exercises of the power to make rules under ERISA.

■ Treas.Reg. § 1.411(a)–4(a) was promulgated under section 411 of the IRC, 26 U.S.C. § 411 (1978), and provides:

Nonforfeitable rights are not considered to be forfeitable by reason of the fact that they may be reduced to take into account benefits which are provided under the Social Security Act or under any other Federal or State law and which are taken into account in determining plan benefits.[11]

Plaintiffs are clearly correct in their assertion that this regulation permits the workers' compensation offset in the plan. Since the language of ERISA indicates otherwise, as discussed *supra*, the question of the validity of the regulation arises. Its validity has split other courts considering the forfeiture issue. Two cases decided in opposite ways in the same district illustrate the problem.

In *Utility Workers Union of America v. Consumers Power Co.*, 453 F.Supp. 477 (E.D.Mich.1978), the court held that the off-

---

**10.** H.R.Rep.No.93–1280, 93d Cong., 1st Sess., *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 5038, 5052. The exceptions referred to in the report, see note 14, *infra*, are unrelated to workers' compensation benefits.

**11.** This regulation interprets the minimum vesting standards section of the IRC but was made applicable to the minimum vesting standards provision of ERISA through § 3002(c) of ERISA, 29 U.S.C. § 1202(c) (1975).

set of workers' compensation benefits constituted a prohibited forfeiture under ERISA. In doing so, the court gave little or no weight to Treas.Reg. § 1.411(a)–4(a) since it was not convinced that the Secretary of the Treasury had been given authority to make final interpretation of ERISA or that the practice of allowing such offsets was either long-standing or of such obviousness that failure by Congress to override it in some way indicated an acquiescence by Congress. In *Bordine v. Evans Products Co.*, 453 F.Supp. 19 (E.D.Mich.1978), the court concluded that such offsets were not prohibited forfeitures, relying in part on the regulation but without discussing its possible conflict with the statutory language.

In a more recent case, *Stong v. Bucyrus-Erie Co.*, 472 F.Supp. 1089 (E.D.Wis.1979), the court held the regulation invalid as inconsistent with the language and intent of the statute. The court questioned whether congressional intent as to the ERISA forfeitability provision bears any relationship at all to the § 411 intent and concluded that the regulation impeded the congressional goal of nonforfeitability. The court stated:

> For they ask me to conclude that, in the course of enacting a comprehensive remedial statute for the protection of the rights of workers to their earned retirement benefits, benefits which are essentially deferred compensation for services rendered, Congress left a gaping hole in its handiwork, allowing these benefits to be reduced proportionately when a retired worker successfully asserts a workers' compensation claim. However, workers' compensation benefits are intended to compensate an employee for suffering a job-related injury and are not intended to supply retirement security.

*Id.* at 1093.

The court continued:

> I think it would be an unreasonable interpretation of ERISA and contrary to its spirit to conclude that Congress inject-

ed another trade-off into this intricate scheme, forcing an employee with a work-related injury to forego the relief provided by statute for such injury in order to preserve his retirement benefits. Clearly, the nonforfeitability rule, with its narrowly defined and carefully delimited exceptions, was aimed at precluding such a harsh dilemma.

*Id.* The court also noted that the Secretary of the Treasury, in a brief submitted to the court urging it to reject the *Utility Workers* result, stated that the *Utility Workers* court " 'gave too much weight to the statutory language....' " In rejecting this reasoning, the court pointed out that the first duty of the court is to accord weight to the statutory language.[12]

In two other cases, United States district courts have invalidated Treas.Reg. § 1.411(a)–4(a) in holding that workers' compensation offsets constitute forfeitures under ERISA. *Buczynski v. General Motors Corp.*, 456 F.Supp. 867 (D.N.J.1978) *aff'd on reconsideration* 464 F.Supp. 133 (D.N.J.1978); *Alessi v. Raybestos-Manhatten, Inc.*, Civil Action No. 78–0434 (D.N.J. 1978). The reasoning of the *Buczynski* court was that the language in ERISA and its legislative history indicate that "... Congress expected that pension benefits would generally be nonforfeitable, and that employees would forfeit benefits only under narrowly defined circumstances." 464 F.Supp. at 136. Since the regulation did not assist in achieving that goal but rather impeded it, it was held to be inconsistent with the statute. The court started with the general proposition that forfeitures of pension benefits are prohibited under ERISA except as to narrowly defined exceptions. Since none of the exceptions even mention workers' compensation benefits, the court held that such an offset was prohibited. The legislative history of ERISA supports this interpretation. Congress de-

---

12. On a motion for reconsideration of the court's ruling in *Stong*, Judge Gordon considered new arguments made by the Secretary of the Treasury in support of the treasury regulation. The court not only rejected these argu-

ments but indicated that they served to reassure it of the correctness of its earlier position, *Stong v. Bucyrus-Erie Co.*, 481 F.Supp. 760 (E.D.Wis.1979).

clared that "an employee's rights, once vested, are [with certain exceptions] not to be forfeitable for any reason...." H.R.Rep. No.93–1280, 93d Cong., 1st Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 5038, 5052.

The holdings in *Buczynski* and *Alessi* recently were reversed by the United States Court of Appeals for the Third Circuit in *Buczynski v. General Motors Corp.*, 616 F.2d 1238 (3d Cir. 1980); *cert. granted* —— U.S. ——, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980). In its analysis, the Third Circuit began with the regulation rather than the statute and, giving great deference to the regulation as a legislative rule, held it valid. Based on *Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977) and its own earlier holding in *Baker v. Otis Elevator Co.*, 609 F.2d 686 (3d Cir. 1979), the court held that to sustain a legislative rule, " 'we need only determine ... that its promulgation is not an abuse of discretion, that it is neither arbitrary or [sic] capricious, not contrary to the governing statutory section and ERISA as a whole,' 609 F.2d at 692." 616 F.2d at 1243. Despite the Third Circuit's interpretation and reversal of the district court holdings, it appears to this Court that the district courts did precisely what the circuit court said should be done. That is, they examined the language and legislative history of ERISA and found the regulation contrary to the governing statutory section and ERISA as a whole.

The Third Circuit placed great emphasis on the treatment of social security benefits under ERISA. It reasoned that when Congress enacted ERISA, the IRS had extensive previous experience in administration of pension plans as they relate to the tax laws. The IRS had promulgated regulations and issued rulings in its administration of the statutory requirement that pension plans be nondiscriminatory. Specifically, the IRS had a long-standing practice of allowing pension plan offsets for social security benefits but not allowing offsets for any increase of social security benefits after a retiree began to receive his pension. Congress adopted and codified this administrative practice in ERISA at 26 U.S.C. § 401(a)(15) (1978). Accordingly, the court reasoned, Congress was giving tacit approval to other types of offsets. That is, by disapproving of offsets against social security benefit increases, Congress was approving of offsets against social security and other benefits in general. In light of the general prohibition against forfeitures under ERISA, it seems far more reasonable to assume that Congress, by disapproving of offsets against social security increases, was approving of social security benefit offsets but not making a sweeping statement about offsets based on other kinds of benefits.

In reaching the same conclusion about forfeitures under ERISA, the court stated in *Riley v. MEBA Pension Trust*, 570 F.2d 406, 409 (2d Cir. 1977) *aff'd on rehearing* 586 F.2d 968 (2d Cir. 1978): "When § 203(a)(3)(B) provides that certain kinds of suspensions are not forfeitures, it necessarily implies that those not falling within its terms are." 570 F.2d at 409. *See also Keller v. Graphic Systems of Akron, Inc.*, 422 F.Supp. 1005, 1008 (N.D.Ohio 1976). Relying on the requirement that a nonforfeitable right be "unconditional and legally enforceable against the plan....", 29 U.S.C. § 1002(19) (1975), Judge Friendly held in *Riley* that a pension plan that prohibited post-retirement employment in a related area placed a condition on the employee's right to receive benefits and constituted a prohibited forfeiture.[13] *See also Stong v. Bucyrus-Erie Co.*, 481 F.Supp. 760, 762 (E.D.Wis.1979). Likewise, plaintiffs' characterization of the offset here indicates that they view an employee's right to receive full pension benefits as conditioned on his not receiving workers' compensation benefits.

---

**13.** Judge Friendly stated:

... The provision ... places a condition on Riley's claim to the monthly benefits to which he would otherwise be entitled and makes his claim legally unenforceable against the Plan; it thus constitutes a forfeiture within the meaning of ERISA. This is nonetheless true because, despite the contrary thrust of the language of the plan, the trustees are willing to pay the benefits if Riley quits his government job. 570 F.2d at 409.

Section 401 of the IRC provides requirements for a trust for pension plan benefits to be a "qualified" trust for tax purposes. Section 401(a)(4), 26 U.S.C. § 401(a)(4) (1978), provides that such a trust may not discriminate as to contributions or benefits in favor of employees who are officers, shareholders, or highly compensated. Section 401(a)(5) provides that a plan shall not be considered discriminatory under section 401(a)(4) because benefits to employees may "... differ because of any *retirement benefits* created under State or Federal law." 26 U.S.C. § 401(a)(5) (1978). (emphasis added). Plaintiffs argue correctly that this provision indicates that at least some forfeitures are permitted under ERISA. That some forfeitures are permitted is clear under section 203 of ERISA itself, the provision under which some forfeitures are prohibited,[14] and under section 206 of ERISA, 29 U.S.C. § 1056(b) (1975), the counterpart to section 401 of the IRC.[15] None of the exceptions in sections 203 and 206 of ERISA is even related to workers' compensation benefits.

Even assuming that the section 401(a)(5) nondiscriminatory provision applies to this forfeiture, it is clear that the provision uses the term "retirement benefits". At issue here are workers' compensation benefits, not retirement benefits in the usual sense. Plaintiffs, again relying on Internal Revenue Service (IRS) interpretations, take the position that workers' compensation benefits are a public retirement program. Plaintiffs base their interpretation on two Revenue Rulings to the effect that disability benefits derived from any state or federal law qualify as public retirement programs for purposes of section 401(a)(5). In one case, Rev.Rul. 62–152, 1962–2 C.B. 126, an offset for disability benefits payable under the Social Security Act was authorized as an acceptable provision in a qualified pension plan which also provided disability benefits.

In the second, Rev.Rul. 68–243, 1968–1 C.B. 157, an offset for benefits payable under workers' compensation was approved.[16] This ruling was based on the reasoning that such benefits require employer contributions and are available to the general public. However, the ruling goes on past what plaintiffs cite in support of their position. The sentence following reads: "However, benefits under the plan may not be offset by disability damages recovered by an employee in a common law action against the employer." 1968–1 C.B. at 157, 158. This must surely be a very confusing ruling. Section 386–5, Hawaii Rev.Stat., provides:

§ 386–5 Exclusiveness of right of compensation. The rights and remedies herein granted to an employee or his dependents on account of a work injury suffered by him shall exclude all other liability of the employer to the employee, his legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at

**14.** Section 203(a)(3) of ERISA, 29 U.S.C. § 1053(a)(3) (1975), provides certain types of situations under which benefits can be forfeited without violating ERISA. These are benefits not payable because a participant dies (except in the case of a survivor annuity), benefits not payable because an employee is reemployed by the same company subsequent to the commencement of payment of benefits, benefits not payable because plan amendments may be given retroactive application as provided under another section of ERISA; and benefits not payable because a participant who is less than 50% vested chooses to withdraw any amount attributable to his own mandatory contributions.

**15.** Section 206 provides:
If—

(1) a participant or beneficiary is receiving benefits under a pension plan, or
(2) a participant is separated from the service and has nonforfeitable rights to benefits, a plan may not decrease benefits of such a participant by reason of any increase in the benefit levels payable under title II of the Social Security Act or the Railroad Retirement Act of 1937, or any increase in the wage base under title II, if such increase takes place after September 2, 1974, or (if later) the earlier of the date of first entitlement of such benefits or the date of such separation.
29 U.S.C. § 1056(b) (1975).

**16.** This ruling was reaffirmed in Rev.Rul. 78–178, 1978–1 C.B. 117.

common law or otherwise, on account of the injury.

The statutory provision in Hawaii, as in every other state, preempts any common law remedy an employee previously may have had against an employer. *See Evanson v. Univ. of Hawaii*, 52 Haw. 595, 483 P.2d 187 (1971); *Stong v. Bucyrus-Erie Co.*, 472 F.Supp. 1089, 1093 (E.D.Wis.1979).

■ To include workers' compensation benefits within the "integration" of benefits provided for under section 401(a)(5), one would have to ignore the nature of workers' compensation. Integration is defined as the "process of meshing a government retirement system with a qualified private plan." M. Canan, Qualified Retirement Plans at 256 (1977). Section 401 attempts to allow integration of retirement benefits such as social security and railroad retirement benefits. While in some cases, workers' compensation benefits are awarded concurrently with or subsequent to retirement, the benefits clearly are intended to indemnify workers for job-related injury or disease—not to provide income lost upon retirement.[17] Significantly, the nature of workers' compensation benefits was considered and discussed by the court in *Utility Workers, supra*, but not in *Bordine, supra*.

Under the Hawaii law, both total and partial disability benefits can be awarded on a temporary basis, Hawaii Rev.Stat. §§ 386–31(b), 386–32(b) (1976). In Rev.Rul. 68–243, *supra*, the IRS ruled that benefits that require employer contributions and are made available to the general public may be offset. However, in Rev.Rul. 78–178, 1978–1 C.B. 117, the IRS came up against its own rule when the question was raised as to offset of unemployment compensation benefits. The IRS ruled that such benefits could not be offset because they are temporary and are not benefits which can be provided under a qualified pension plan even though they are benefits that require employer contributions and are made available to the general public. In that ruling, the IRS conceded that there are many benefits under public programs that cannot be integrated with pension benefits, citing benefits payable under state or federal programs because of sickness as an example. *See* Treas.Reg. § 1.401–1(b)(1)(i). The IRS considered the temporary nature of unemployment benefits to be an important factor in its ruling. These characteristics of unemployment insurance as related to workers' compensation also cast doubt on the usefulness of the IRS interpretation of what constitutes a forfeiture under ERISA. Workers' compensation is basically a program designed to compensate for work-related illness or injury and is often awarded on a temporary basis. The benefits awarded to defendants Lin, Young and Kaai are temporary total disability payments and can be terminated if the Director of Labor and Industrial Relations finds their temporary disabilities have ceased.

■ The statutory language in ERISA and its legislative history, the compensatory nature of workers' compensation benefits and the clear policy to prohibit forfeitures except in certain specified instances convinces this Court that offsets for workers' compensation benefits as provided for in this pension plan constitute forfeitures under ERISA.

17. That the benefits are intended to be compensatory is clear from specific sections of the Hawaii law. For example, an employer is liable for personal injury caused either by accident in the course of employment or by disease proximately caused by or resulting from the nature of the employment, Hawaii Rev.Stat. § 386–3. The law also provides that an employer shall furnish medical care, services and supplies, Hawaii Rev.Stat. § 386–21, any artificial limbs or other aids, Hawaii Rev.Stat. § 386–22, medical rehabilitation, Hawaii Rev. Stat. § 386–24, and vocational rehabilitation, Hawaii Rev.Stat. § 386–25. Also indicative of the compensatory nature of the benefits are sections that provide that certain types of injuries shall be deemed permanent and total for purposes of awarding benefits. These include total loss of sight in both eyes, loss of both feet or hands, loss of one hand and one foot and paralysis, Hawaii Rev.Stat. § 386–31. The same is true for the provision concerning partial disability. The loss of a thumb, certain fingers or toes, one hand, one arm, one foot, one ear, among others, constitute partial disability. Hawaii Rev.Stat. § 386-32. For each type of injury, the statute provides for certain periods of coverage for partial disability.

#### c. Individual defendants

This leaves the final question of whether each of the defendants had reached a stage according to his age or length of employment with the company so that such "forfeiture" or "offset" against his benefits is prohibited.

As to minimum vesting and nonforfeiture, the defendants fall into three categories: (1) voluntary retirement at over the normal retirement age and receiving a Service Retirement Benefit (Edward Young) (2) terminated by the company at below normal retirement age, vested due to a period of over 10 years of service and receiving disability benefits, (Frank Yee and James Jeremiah), and (3) terminated by the company at below normal retirement age with less than 10 years of service and receiving disability benefits (Edmund Lin and Cornelio Kaai).

The disability benefits are exclusive of all other benefits under the plan. That is, these benefits are and will continue to be the *only* retirement benefits received by these defendants. They will not be entitled to receive an additional Service Retirement Allowance upon attaining age 60.[18] This fact is important in characterizing the benefit under ERISA's nonforfeiture and minimum vesting provisions.

#### (1) Edward Young

■ The application of the setoff to Young raises two further issues under ERISA: (1) whether he is receiving a "normal retirement benefit" and (2) whether he had attained "normal retirement age" when he retired. Under ERISA, normal retirement benefit "means the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age." 29 U.S.C. § 1002(22) (1975). Young retired at over the age of 60 and took a Service Retirement Allowance under art. V.1.(a) or (b) of the plan. This is a benefit under the plan commencing at normal retirement age. Under ERISA, 29 U.S.C. § 1002(24) (1975), the term normal retirement age means the earlier of—

(A) the time a plan participant attains normal retirement age under the plan, or

(B) the later of—

(i) the time a plan participant attains age 65, or

(ii) the 10th anniversary of the time a plan participant commenced participation in the plan.

Under the plan, "normal retirement *date*" (emphasis added) is defined as the "first day of the month coinciding with or following the Employee's sixty-fifth (65th) birthday." The plan also defines "early retirement date" as "any date prior to the Normal Retirement Date on which the member Retires or is Retired...." It is clear from the plan and from plaintiffs' use of the term in their memoranda that "normal retirement age" is 60, not 65. The plan defines "early retirement" to be a retirement prior to age 60 and an employee may retire and receive a Service Retirement Allowance upon attaining age 60. Upon retirement, Young began receiving a normal retirement benefit and had attained normal retirement age. Therefore, the offset against his pension benefits is a forfeiture prohibited under ERISA.

#### (2) Frank Yee and James Jeremiah

■ Frank Yee retired at age 53[19] with more than 25 years of service and James Jeremiah at age 55[20] with 34 years of service. Both were retired by unilateral action of the company and are now receiving disability benefits. The plan includes alternative (A) under 29 U.S.C. § 1053(a)(2) (1975) which provides: "A plan satisfies the requirement of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer

---

**18.** Although this feature of the plan is not clear from the plan itself, plaintiffs filed an affidavit that indicated this is a correct interpretation of the plan.

**19.** Frank Yee's birth date is November 19, 1923.

**20.** James Jeremiah's birth date is August 14, 1922.

contributions." Under 29 U.S.C. § 1002(23)(A) (1975), "accrued benefit" means "the individual's accrued benefit determined under the plan and, . . . expressed in the form of an annual benefit commencing at normal retirement age, . . . ." Under the plan, accrued benefit is equivalent to the employee's accumulated contributions plus pension, with pension defined in the plan as "payments under the System for life derived from contributions made by the company."

Both Yee and Jeremiah are receiving disability benefits to which they are entitled because they were retired by the company based on the company's determination that they were permanently incapacitated for the further performance of duty. Under the plan, this type of benefit is exclusive of all others. That is, an employee already receiving a disability benefit is not entitled to elect to receive an additional Service Retirement Allowance upon attaining age 60 nor a Vested Retirement Allowance at a later date. The disability benefit is calculated as 66⅔ percent of the employee's average final salary and commences immediately upon retirement. The Service Retirement Allowance available at age 60 and after 15 years of creditable service is calculated by multiplying 1.65 percent of the average final salary by the years of creditable service. The company indicates that, in almost all cases, an employee will receive larger periodic payments under a disability benefit than under a Service Retirement Allowance. Both Yee and Jeremiah would have been eligible for a Service Retirement Allowance at age 60 had they not been retired by the company.

Under section 203 of ERISA, an employee is protected against forfeiture of a normal retirement benefit at normal retirement age. "Normal retirement benefit" is defined as "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age." 29 U.S.C. § 1002(22) (1975). The normal retirement benefit "shall be determined without regard to—

(A) medical benefits, and

(B) disability benefits not in excess of the qualified disability benefit."

*Id.* A qualified disability benefit is "a disability benefit provided by a plan which does not exceed the benefit which would be provided for the participant if he separated from the service at normal retirement age." *Id.* The description of the term "accrued benefit" in the legislative history indicates that the term was used synonymously with normal retirement benefit.[21] The point seems to be that an employee has a nonforfeitable right to pension benefits after 10 years of creditable service and upon attaining normal retirement age.

Since the definition of normal retirement benefit excludes disability benefits which do not exceed benefits received if an employee were separated at normal retirement age, this Court concludes that normal retirement benefits do include disability benefits which exceed those which could have been received if the employee were separated at normal retirement age. This interpretation treats the accidental disability benefits received by Yee and Jeremiah as "normal retirement benefits." Therefore, once they reach normal retirement age, 60 under this plan, any offset of workers' compensation benefits constitutes a prohibited forfeiture in violation of section 203 of ERISA, 29 U.S.C. § 1053 (1975). Any offset prior to age 60, though a forfeiture under ERISA, is not prohibited.

■ Plaintiffs, in order to bring the plan in compliance with the minimum vesting and nonforfeiture provisions of ERISA as to Yee and Jeremiah, must treat their disability benefits as "normal retirement benefits" when each reaches age 60 or convert

---

**21.** Under the conference substitute, the term "accrued benefit" refers to pension or retirement benefits. The term does not apply to ancillary benefits, such as payment of medical expenses (or insurance premiums for such expenses), or disability benefits which do not exceed the normal retirement benefit payable at age 65 to an employee with comparable service under the plan, or to life insurance benefits payable as a lump sum. H.R.Rep.No.93–1280, 93d Cong., 1st Sess., *reprinted in* [1974] U.S. Code Cong. & Admin.News, pp. 5038, 5054.

each employee's disability benefits into a Service Retirement Allowance at age 60 if the employee chooses that age or a Vested Retirement Allowance at age 65 if the employee chooses the later age. This option of the company must be carried out without any penalty to the employee based on his prior receipt of disability benefits. Any benefit chosen by the employee at or after age 60 is protected against forfeiture under ERISA. The fact that the company unilaterally terminated these employees before the normal retirement age distinguishes their cases from those in which an employee chooses to take early retirement before age 60.[22]

(3) Edmund Lin and Cornelio Kaai

■ Edmund Lin retired at age 53 with seven years of service and Cornelio Kaai at age 52 with seven years of service. Neither of them satisfied the 10-year period for minimum vesting under the plan and section 203 of ERISA. Therefore, their benefits are not protected against forfeiture under ERISA.

■ However, defendants also claim that the offset provision is unenforceable because it violates the policy of the State of Hawaii. Specifically, defendants base their claim on a decision of the Labor and Industrial Relations Appeal Board of the State of Hawaii.[23] The company appealed the award of workers' compensation benefits to Mrs. Pascoe using the offset provision as the basis of its appeal. The company argued to the Appeals Board that it should be allowed to offset pension benefits against workers' compensation benefits—the reverse of the argument made here. Because of the offset provision, the company sought to relieve itself of the obligation under state law to pay workers' compensation benefits. In denying the appeal, the Board stated:

"Hawaiian Telephone Company seeks to be relieved of its workers' compensation liability to Mrs. Pascoe because the Rules and Regulations of the Retirement System of the Hawaiian Telephone Company state that moneys paid pursuant to the compensation law are to be offset against benefits payable under the retirement plan from Company contributions. In effect, it is attempting to invoke the Board's aid in the enforcement of the retirement system's rules. The strong policy expressed in Chapter 386 against diminution or cancellation of compensation liability through any means, however, precludes the Board from granting the relief sought. See: §§ 386–9, 386–57, and 386–129." [24]

The clear language of Hawaii Rev.Stat. § 386–9 (1976) alone appears to rule out any such offset provision. Section 386–9 reads:

Contracting out forbidden. Except as provided in § 386–78, no contract, rule, regulation or device whatsoever shall operate to relieve the employer in whole or in part from any liability created by this chapter.[25]

Plaintiffs are obligated under state law to pay any workers' compensation benefits awarded and are obligated by their pension plan to pay pension benefits. In their reply to defendants' motion for summary judgment, plaintiffs dismiss defendants' arguments based on state law as "wholly without merit because Plaintiffs are offsetting pension benefits, not workers' compensation benefits." The problem is that plaintiffs characterize the benefits in question as either workers' compensation benefits (to the

22. The legislative history indicates that ERISA is not intended to protect against forfeiture those employees choosing early retirement. "Also, the accrued benefit does not include the value of the right to receive early retirement benefits, ...." H.R.Rep.No.93–1280, 93d Cong., 1st Sess., reprinted in [1974] U.S.Code Cong. & Admin.News, pp. 5038, 5054. This provision of ERISA was the basis of this Court's decision in Capocci v. General Motors Corp., 444 F.Supp. 1306 (D.Hawaii 1978), that early retirement benefits are not protected against forfeiture under ERISA.

23. See note 2, supra.

24. Decision and Order of Appeals Board at 3, see note 3, supra.

25. Section 386–78 covers compromises of claims. The exception is not applicable here.

Appeals Board) or as pension benefits (to this Court) to suit their arguments at the moment. This leaves the recipients in a carefully constructed Catch 22 in making any claims of entitlement to both benefits.

By including the offset provision in the plan and raising ERISA as support for the provision's validity, plaintiffs are attempting to accomplish indirectly what they cannot accomplish directly. Plaintiffs are required by state law to pay workers' compensation benefits. In distinguishing the same situation in *Utility Workers, supra,* from one in which contractually-incurred severance pay was offset against pension benefits, the court in *Spitzler v. New York Post Corp.,* 476 F.Supp. 386, 389 (S.D.N.Y. 1979), pointed out:

> The present case differs from *Utility* in one very critical respect. In *Utility,* the workmen's compensation benefit was required by state law; thus, these payments could not be reduced. Instead, the defendant in *Utility* reduced the pension entitlement which was forbidden by ERISA. In the instant case, these severance payments are not required by law. They are purely contractual in nature.

The clear policy of the State of Hawaii to prevent employers from taking any action to reduce their obligations to pay workers' compensation benefits bars any relief declaring that the offset is valid or that plaintiffs have the right to the return of money.[26]

Accordingly, IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment is DENIED except as to the application of ERISA to defendant Pascoe and as to a declaration that application of the offset to defendants Lin and Kaai does not constitute a prohibited forfeiture under ERISA as to which partial summary judgment is GRANTED.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is GRANTED as to a declaration that the offset provision in the Hawaiian Telephone pension plan constitutes a forfeiture under ERISA except as to defendant Pascoe.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment is GRANTED as to a declaration that the offset as applied to defendant Young is prohibited under ERISA and state law.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is GRANTED as to a declaration that the offset as applied to defendants Yee and Jeremiah is invalid as to any offset carried out after Yee and Jeremiah reach the age of 60. Also, at plaintiffs' option, Yee's and Jeremiah's disability benefits must be treated as normal retirement benefits at age 60 or be converted to either Service Retirement Allowances at age 60 if the employee chooses that age or Vested Retirement Allowances at age 65 if the employee chooses the later age. Any of these benefits must be treated as normal retirement benefits subject to the nonforfeiture provisions.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is GRANTED as to a declaration that the offset provision in the Hawaiian Telephone pension plan violates the Hawaii Workers' Compensation Law as to all defendants.

---

**26.** Any possible issue of federal pre-emption of ERISA of the state workers' compensation law is precluded by the language of ERISA. Section 514(a) of ERISA, 29 U.S.C. § 1144(a) (1975), provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

Section 4 of ERISA, 29 U.S.C. § 1003(b)(3) (1975), provides:

> The provisions of this subchapter shall not apply to any employee benefit plan if—
>
> (3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws;

*Cf. Standard Oil of California v. Agsalud,* 633 F.2d 790 (9th Cir. 1980), *aff'g* 442 F.Supp. 695 (N.D.Cal.1977).