**The MILLER COMPANY**

v.

**UNITED STATES of America.**

**Civ. No. H–78–483.**

United States District Court,
D. Connecticut.

June 23, 1981.

Richard W. Tomeo, Robinson, Robinson & Cole, Hartford, Conn., for plaintiff.

John S. Miles, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

CLARIE, Chief Judge.

The parties have filed cross-motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff is seeking a refund of federal income taxes which, it contends, were improperly assessed by the defendant. The plaintiff claims to have a statutory right to deduct, in full and in a single year, a final cash contribution to its terminating pension plan. The defendant asserts that such a deduction must be limited to a percentage of that contribution, with deduction carryovers to subsequent years. The Court finds in favor of the Government, and the defendant's motion for summary judgment is granted.

### Jurisdiction

This Court has jurisdiction in this case pursuant to 28 U.S.C. § 1346(a)(1).

### Facts

In 1955 the plaintiff adopted a pension plan which provided, for eligible employees, a lifetime retirement benefit. The assets of this plan were held in a pension trust, to which the plaintiff made regular contributions. The plan was a "defined benefit plan," within the meaning of section 3(35) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1002(35) (ERISA). This plan was subject to the termination provisions of ERISA, 29 U.S.C. §§ 1301–381.

On October 23, 1975, the plaintiff closed its Wells Tube Mill Division, and the last employee of the Division separated from service with the plaintiff on October 31, 1975. On March 16, 1976, the plaintiff contributed $249,344 to the pension trust. This latter sum represented a final contribution to the pension plan; it was an amount calculated to provide, together with existing pension plan assets, funds sufficient to purchase annuity contracts to provide guaranteed benefits for pension plan participants. The parties agree that, for federal income tax purposes, this final payment is deemed to have been made on December 31, 1975. 26 U.S.C. § 404(a)(6). On its federal income tax return for the taxable year 1975, the plaintiff claimed, as a deduction, the entire $249,344 contribution.

The defendant disallowed the full amount of this deduction, taking the position that the maximum deduction allowable in 1975 was $66,200, with a carryover of the excess contribution to future years. The effect of this partial disallowance was a reduction of the plaintiff's net operating loss for 1975, with a consequential reduction of its investment tax credits which had been carried back on its tax returns to its taxable years 1969 through 1973. The latter reduction led to income tax deficiencies of $87,090 and interest obligations of $14,176.64. The plaintiff seeks a refund of these payments, plus statutory interest.

The plaintiff contends that the applicable statute permits a deduction, in full, for a contribution made to a pension trust in order to fund fully a terminated pension plan. The defendant argues that the applicable regulations permit only a partial deduction of such a contribution for 1975, with the balance deducted over a period of future years.

### Discussion of the Law

The parties agree that the applicable statute is 26 U.S.C. § 404(a)(1). This section outlines the allowable deduction limitations for employer contributions to a pension plan, and it provides, in part, as follows:

"[an employer may deduct] (A) an amount not in excess of 5 percent of the compensation otherwise paid or accrued during the taxable year to all the employees under the trust, but such amount may be reduced for future years if found by the Secretary or his delegate upon periodical examinations at not less than 5-year intervals to be more than the amount reasonably necessary to provide the remaining unfunded cost of past and current service credits of all employees under the plan, plus

(B) any excess over the amount allowable under subparagraph (A) necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level

amount, or a level percentage of compensation, *over the remaining future service of each such employee, as determined under regulations prescribed by the Secretary or his delegate*, but if such remaining unfunded cost with respect to any 3 individuals is more than 50 percent of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least 5 taxable years . . . ." 26 U.S.C. § 404(a)(1)(B) (emphasis added).

The plaintiff emphasizes that section 26 U.S.C. § 404(a)(1)(B) (the "B" limitation) provides for a deduction of pension contributions over the "remaining future service" of plan participants. Thus, the final contribution to the plan should be deductible in full, argues the plaintiff, because the participants in the plan did not have any "remaining future service" after 1975. The defendant replies that the phrase "remaining future service" is properly qualified by applicable Treasury Regulations, which limit the maximum allowable deduction in 1975 to $66,200. The defendant acknowledges that the balance of the contribution might be carried forward as deductions for subsequent years.

The plaintiff's argument has some superficial appeal, in that the plaintiff's employees appear to have had no "remaining future service" after their termination in 1975. However, this argument overlooks the clear provision in the statute whereby the "remaining future service" of an employee is to be *determined under regulations* prescribed by the Secretary. *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975) (*Azure* states the "doctrine of the last antecedent"). It is thus obvious that Congress contemplated situations whereby "remaining future service" should mean something other than simple retirement or termination.

The applicable Treasury Regulation details the procedures to be used in determining the "amount remaining to be distributed . . . over the remaining future service of each employee . . . ." Treas.Reg.

§ 1.404(a)–5. The Internal Revenue Service computed the maximum deduction allowable to the plaintiff, for the 1975 taxable year, by applying the provisions outlined in Treasury Regulation §§ 1.404(a)–5(c), (d).[1]

The defendant relies on Treasury Regulation § 1.404(a)–5(c)(7) for its position that it is inappropriate for the plaintiff to distribute costs as a level percentage of aggregate costs over a one-year period. The regulation states:

"Compute the excess under section 404(a)(1)(B) for the year by multiplying the compensation paid to all employees covered under the plan during the year by any excess of subparagraph (6) of this paragraph over 5 percent. In general, where this method is used, the limitation under section 404(a)(1)(B) will be equal to the excess so computed without further adjustment on account of prior favorable experience, provided all the factors and assumptions used are reasonable in view of all applicable considerations (see § 1.404(a)–3) *and provided subparagraph (5) of this paragraph is not less than five times the annual rate of compensation in effect at the beginning of the year.*" Treas.Reg. § 1.404(a)–5(c)(7) (emphasis added.)

Subparagraph 5, referred to in subparagraph 7, *supra,* represents the value of all compensation expected to be paid after the beginning of the year to all employees then covered under the plan. These regulations have been considered by the Internal Revenue Service in Revenue Ruling 60–132, 1960–1 C.B. 166. In that ruling, it was stated:

"Section 1.404(a)–5(c)(7) of the Income Tax Regulations make it clear that a distribution of costs as a level percentage of aggregate compensation over a one-year period is *not acceptable* for the pur-pose of determining deductible limits under section 404(a)(1)(B) of the Code, since it is required that the value of such compensation be not less than five times the annual rate of compensation in effect at the beginning of the year." *Id.* at 167 (emphasis added).

The Internal Revenue Service indicated, consequently, that the amount allowable as a deduction for the current taxable year should be determined by distributing "the unfunded cost of past and current service credits over the period remaining until the normal commencement of the retirement benefits to the employees." *Id.* The latter approach was the one taken by the Internal Revenue Service in the case at bar, and the Court finds that such an approach here represents an appropriate, actuarial determination. The Court further finds that the phrase "remaining future service" is a term of art which is properly susceptible of the defendant's interpretation.

Congress, in passing 26 U.S.C. § 404(a)(1)(B), clearly contemplated situations whereby the phrase "remaining future service" might require a definition which incorporates something other than the facial, literal meaning of the phrase. This is evidenced by the accompanying proviso that "remaining future service" is to be "determined under regulations prescribed by the Secretary...." Thus, this is a "legislative," rather than an "interpretive," regulation. *Jones v. United States,* 553 F.2d 667, 670 n.8, 213 Ct.Cl. 529 (1977). It parallels a provision in the statute which, in certain cases, also requires amortization of unfunded costs over a period of at least five years, *regardless of the actual termination date of the particular employee.*[2] The fact that the regulation at issue parallels this statutory amortization requirement does not, in itself, render the regulation inconsistent with the enabling statute. Consequently, it is not an

---

**1.** Simply stated, the Internal Revenue Service indicated that the plaintiff must distribute the cost of past and current service credits over the period remaining until the normal commencement of retirement benefits to the plaintiff's employees. *See* Defendant's Memorandum In Support Of It's Motion For Summary Judgment at 4, n.3 (Nov. 17, 1980); Stipulation of Facts at 5, ¶ 22 (Aug. 29, 1980).

**2.** "[I]f such remaining unfunded cost with respect to any 3 individuals is more than 50 percent of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least 5 taxable years ...." 26 U.S.C. § 404(a)(1)(B).

impermissible exercise of rule-making power. On the contrary, the Court is not aware of any valid reason why the Secretary could not have issued a regulation which effectively required amortization over five, six, or seven years. The choice of an amortization period which must cover at least five years merely reflects a recognition that Congress had approved a similar requirement in another, related context. *See* note 2 *supra.* The Court finds the regulation, as applied, to be harmonious with the statute and therefore valid. *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. 472, 476–77, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979).

The synthesis of this analysis is that 26 U.S.C. § 404(a)(1)(B) does authorize the promulgation of Treasury Regulation § 1.404(a)–5, and that regulation limits the deductions available to the plaintiff in a manner which requires amortization. The Court will not authorize a deduction which is not provided by statute or regulation.[3] It is a basic tenet of tax law that the availability of deductions is not governed by equitable considerations; rather, deductions are permitted only where authorized by Congress and, when authorized, they are strictly construed. *Standard Oil Co. v. United States,* 338 F.2d 4, 8 (2d Cir. 1964). *See also Equitable Life Assurance Society v. Commissioner,* 321 U.S. 560, 564, 64 S.Ct. 722, 724, 88 L.Ed. 927 (1944); *Jack's Cookie Co. v. United States,* 597 F.2d 395, 400 (4th Cir. 1979); *United States v. UTCO Products, Inc.,* 257 F.2d 65, 67 (10th Cir. 1958). This principle is especially true when the Court is conducting its inquiry in an area of the law where Congress has legislated, and continues to legislate subsequent to the adoption of the statute with which we are presently concerned, with great precision and consideration.[4] The ERISA statutes constitute such an area. *See Employee Benefits Committee v. Pascoe,* 504 F.Supp. 958, 964 (D.Haw.1980).

The plaintiff's remaining claim, that ERISA has introduced "material changes with respect to the obligation of employers," is without significance. It is true that employers are only recently obliged to make up funding deficiencies upon plan termination. However, the passage of ERISA made no change in the limitations of section 404(a)(1)(B). Section 404(a)(1)(B) need not be reinterpreted because of the mandatory provisions of ERISA.

The plaintiff's motion for summary judgment is denied; the defendant's motion for summary judgment is granted.

SO ORDERED.

---

**3.** The Court is especially reluctant to approve the type of deduction sought by the plaintiff in view of the potential, undesirable consequences of such an approval. For example, as the defendant has pointed out, an employer closing one plant would be discouraged from rehiring, at another plant, the employees who had been terminated, in order to avoid losing a substantial deduction. Similarly, the Court, by approving the plaintiff's view, might encourage corporations to cease some subsidiary operations in order to gain a tax benefit.

**4.** The Court notes that Congress has recently enacted a prospective statute which partially provides for the type of deductibility which the plaintiff seeks in the case at bar. 26 U.S.C. § 404(g). This action indicates, first, that Congress perceived existing statutes and regulations as limiting the deductibility of payment on termination and, second, that Congress, even now, does not approve of full deductibility of all termination payments.